## IN RE BANKS' WILL.*

*Construction of a Will—Executory Devise—Contingent Remainder—
Defeasible Fee—What Passes to a Trustee in Insolvency—Possibility of Acquiring Property.*

An executory devise may be limited to take effect after a fee-simple, when the fee is made determinable upon some contingent event.

Where a remainder after a life-estate is devised in fee to A. and it is provided that if A. die under the age of twenty-one and without issue, then the property shall pass to others, the fee becomes vested in A. after the expiration of the life-estate before his attaining the age of twenty-one, but his death without issue before that age is a condition subsequent upon the happening of which the fee is divested.

At the time of making his will the testator had living one son and two daughters, a grandson, the child of a deceased daughter of the testator and two granddaughters, the children of another deceased daughter. After giving pecuniary legacies to the above mentioned grandchildren, and a share of his estate to his son, the testator devised the residue of his estate in trust as to one-half for his daughter Margaret and as to the other half for his daughter Anna, during their lives, with remainders in fee to their respective issues living at the time of their death. The will then provided that in case either of the daughters should die without issue, then her share should be divided equally between the testator's son, the surviving daughter for life and her issue, and the grandson and the granddaughters, the two latter taking but one share. It was also provided that "in case *any* of the children of my daughter shall die before attaining the age of twenty-one and without issue" then the share of the estate devised to them shall pass to "such persons as by the then existing laws of Maryland would take the same as my heirs and distributees." Anna, one of the testator's daughters, died some years after probate of the will, leaving six children surviving, one of whom, F., died before attaining twenty-one years and without issue. The question in this case was as to the devolution of the share of F. so dying without issue. *Held*,

1. That under the will the children of Anna took contingent remainders in fee which became vested upon her death, but were subject to be divested by the death of any of them under age and without issue ;

---

that the remainder to F. was so divested and passed to the testator's heirs at law and distributees, and not to the brothers and sisters of F.

2. That it was not the testator's intention to divide his property equally among his children and grandchildren, the latter taking *per stirpes*, but upon a consideration of the whole will it appeared to be his purpose, upon the death of any of the remaindermen under age and without issue, to send back the respective shares for redistribution among the several stocks of inheritance.

3. That the executory devise over of F.'s share upon his death under age and without issue is not invalid because inconsistent with the absolute estate previously given.

4. That the devise to Anna's children after her death and the devise over upon the death of any of them without issue, &c., did not operate to create alternative contingent remainders between her children and the testator's heirs which became vested in the children at her death, but the trust which supported the remainders ceased upon Anna's death the devise over to testator's heirs operated as an executory devise.

Whether property passes to a trustee in insolvency or not depends upon whether that property could have been devised or assigned by the insolvent or could have descended from him ; in the absence of a statute otherwise providing.

Code, Art. 47, sec. 2, provides that all the property and estate of every description, rights and claims of an insolvent shall vest in the trustee.  *Held*, that the mere possibility of the acquisition of property by the insolvent at some future time under an executory devise does not vest in his trustee in insolvency.

After a party had been adjudicated an insolvent he became entitled to property under an executory devise in ·a will which provided that upon the death of certain persons under age and without issue, the property should pass to the testator's heirs.   The insolvent was one of these heirs.   *Held*, that this property did not pass to the trustee in insolvency, because at the time of the adjudication the persons who were to take as testator's heirs were not ascertained and the insolvent had only a contingent interest in an estate which might or might not arise *in futuro* and which could vest only in the event of his answering the description of heir at a future time, and which he could have neither devised nor assigned.

Appeal from a decree of the Circuit Court of Baltimore City (DENNIS, J.), by which it was adjudged "that under a proper construction of the will of Daniel B. Banks, deceased, Anna Godwin, Sarah Godwin, Margaret Godwin,

Rebecca Godwin, Alice Godwin and W. Frank Godwin, children of Anna W. Godwin, each took contingent remainders in fee in the one-sixth of the property passing under said will which, in the case of *Andrew Banks* v. *Margaret W. Dorsey and others* (a suit for partition instituted in this Court), was allotted to Andrew Banks as trustee of said Anna W. Godwin for life, with limitations over. That upon the death of their mother, Anna W. Godwin, on the 13th day of July, 1890, said contingent remainders became vested subject to their being divested as to the share of any child upon the death of such child under age, and without issue. That upon the death of said W. Frank Godwin, Jr., on the fourth day of November, 1896, under age and without issue, his share in said property, being one-sixth thereof, was divested by his so dying and passed by way of limitation over to the persons who are heirs at law and distributees of the testator, determined as of the time of said W. Frank Godwin's death, according to the then existing laws of Maryland."

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, ROBERTS, BOYD and PEARCE, JJ. (March 3, 1898).

*Samuel D. Schmucker, George Whitelock* and *Edgar Allan Poe* (with whom was *John P. Poe* on the brief), for Margaret Godwin *et al.*, appellants.

*Richard S. Culbreth*, for R. S. Culbreth, Trustee in Insolvency, appellant.

*Arthur Geo. Brown* (of *Brown & Brune*) and *George Stewart Brown*, for Andrew Banks *et al.*, appellees.

PEARCE, J., delivered the opinion of the Court.

The questions to be considered in the record now before us, arise upon the following facts:

Daniel B. Banks, by his will, probated February 9th, 1875, among other things devised and bequeathed to his

son Andrew Banks, all the residue of his real and personal estate, in trust, as to one-half thereof, for his daughter, Margaret W. Dorsey, and as to the other half thereof, for his daughter, Anna W. Banks, during their respective lives, with remainder to their respective issue, living at their death *per stirpes*, and then made the following provisions :

"In case either of my said daughters shall die without leaving issue living at the time of her death, it is my will that the one-half part of the *corpus* of the said rest and residue of my estate, which, under the provisions of the two clauses next preceding this *would have passed to her issue, had she left any*, shall be divided equally amongst my said son, Andrew Banks, and his heirs ; my surviving daughter for her natural life, and her issue living at the time of her death, *per stirpes*, for her sole and separate use free from liability for the debts, contracts or engagements of her husband, and not·subject to his control ; my grandson, Harry Slingluff and his issue ; and my granddaughters, Alice M. Smith and Margaret Smith, and their issue, the said two granddaughters taking together but one share thereof; and in case both of my said daughters shall die without leaving issue living at the time of their death respectively, it is my will that the said rest and residue of my estate, which as hereinbefore provided, would have passed to their issue respectively, had they left any, shall be divided equally amongst my son, Andrew Banks, and his heirs ; my grandson, Harry Slingluff, and his issue ; and my granddaughters, Margaret Smith and Alice Maud Smith, and their issue, the said two granddaughters taking together but one share.

"In case any of the children of my daughters shall die before attaining the age of twenty-one years and without issue, it is my will that the share of my estate devised and bequeathed to them respectively, shall pass to and devolve upon such persons as by the then existing laws of Maryland would take the same as my heirs at law and distributees."

Anna W. Banks subsequently became Anna W. God-

win, and died in 1890, leaving surviving her six children, one of whom, W. Frank Godwin, died in 1896, before reaching twenty-one years of age, and without issue ; Anna and Sara Godwin, two of the remaining five children then filed a bill in the Circuit Court of Baltimore City, against the other three of said children, who were infants, and against sundry other persons who were, and still are, the heirs-at-law of Daniel B. Banks at the time of W. Frank Godwin's death, asking for a partition into six equal parts of the whole share which had been allotted to their mother, Anna W. Banks, for life, under the will of Daniel B. Banks, with limitations over as set forth ; and that five of said six parts be allotted to the five surviving children, and the remaining one-sixth part be set aside as the share of W. Frank Godwin, deceased, to be dealt with as thereafter determined by the Court. The bill also prayed that the will of Daniel B. Banks, so far as related to the said executory devise over, might be construed by the Court, and that if the said executory devise over should be held valid, that said one-sixth part should be sold, and the proceeds divided amongst the parties entitled according to their respective interests. Andrew Banks had applied in 1889 in the Circuit Court for Baltimore County, for the benefit of the insolvent law, and Richard S. Culbreth, having been appointed his permanent trustee in insolvency, was also made a party defendant to these proceedings, and all the defendants have answered.

Richard S. Culbreth claims that the devise over was valid and that the interest of Andrew Banks in said one-sixth part passed to him as permanent trustee, by operation of section 2 of Art. 47 of the Code of Public General Laws of Maryland.

Andrew Banks also claims that the devise over was valid, but claims that his interest in said one-sixth part does not pass to his trustee in insolvency, but vests in the said Andrew Banks absolutely, and in his own right, free from all debts owing by him prior to his petition in insolvency, and free from the control of the insolvent trustee appointed by

said Court, and he relied upon his discharge in insolvency, a copy of which was filed with his answer. The other adult defendants admitted the allegations of the bill, and the infant defendants, by their guardian *ad litem*, answered, contending that the executory devise over is void, and that upon the death of W. Frank Godwin, intestate and without issue, his share devolved upon the remaining children of Anna W. Godwin. On proof taken the Court decreed the partition prayed, and construing the will of Daniel B. Banks, also decreed that the children of Anna W. Banks—under the said will—took contingent remainders in fee, which became vested upon the death of their mother, but which were subject to be divested by death under age, and without issue, and that the remainder of W. Frank Godwin was so divested by his death under age and without issue, and that the share and interest of Andrew Banks, as one of the heirs at law and distributees of his father, in the share of said W. Frank Godwin, passed to and vested in Andrew Banks in his own right, and not in his trustee in insolvency. From this decree three appeals were taken, one by Anna and Sara Godwin, the plaintiffs below, one by Richard S. Culbreth, the insolvent trustee, and one in behalf of the infant defendants by their guardian *ad litem*. These three appeals have been brought here in one record, and we shall consider all the questions arising therein in their order of presentation, but before doing so it may be stated that after the death of W. Frank Godwin, Richard S. Culbreth, as permanent trustee of Andrew Banks filed a petition in the insolvent proceedings in the Circuit Court for Baltimore County, setting up his claim as such trustee to the interest of Andrew Banks, in the share of said W. Frank Godwin, and praying that Andrew Banks be required to file a supplemental schedule of assets which should include said interest. Margaret W. Dorsey, at the same time filed a petition in said insolvent proceedings, alleging that she had recovered a judgment in the Circuit Court for Howard.

County, in 1889, against Andrew Banks, for over seventeen thousand dollars, prior to his application in insolvency, which judgment was still unsatisfied, and a copy of which had been duly entered in Baltimore County, and that the interest of said Andrew Banks had passed to his trustee in insolvency subject to the lien of her said judgment, and she prayed that said lien be recognized and established and its validity and priority be allowed.    These two petitions were by order of Court consolidated, and Andrew Banks demurred to each of them.    A *pro forma* order was by agreement, passed dismissing these petitions, and from that order two appeals in one record have been sent up.    As a matter of convenience the questions involved in these appeals were argued together with those arising upon the record now before us, but they will be disposed of hereafter in their proper place.

These cases have been argued by the numerous counsel engaged therein with great zeal and with marked ability, and we have given to the consideration of these arguments careful and patient investigation and consideration.    1st. We shall first consider the fourth point relied on by the appellants in this record who were plaintiffs below, as that contention if sustained, would dispose of all the questions involved in both records.    Their contention is that the third word of the clause which attempts to create executory devise over, the word "any," should be read "all," thus making the clause read as follows: " In case *all* of the children of any of my daughters shall die before attaining the age of twenty-one years, and without issue, it is my will that the share of my estate devised and bequeathed to them respectively, shall pass to and devolve upon such persons as by the then existing laws of Maryland would take the same as my heirs at law or distributees," and they maintain that by this means "full effect and an harmonious interpretation can be given to all the clauses of the will in accordance with the manifest and general intention of the testator;" and they assert this manifest and general intention to be to provide:

1st, for Anna during her life; 2nd, for such of her offspring and their descendants, as should survive her, and 3rd, for his heirs at law in the event of the death of *all* of Anna's children under age and without issue. We should not hesitate to make this change of language if we could agree with appellants as to the general intent of the testator, and the result of the proposed change in giving an harmonious interpretation of all the clauses of this will, just as we did not hesitate in the recent case of *Slingluff* v. *Johns*, *ante*, p. 273, to read the words, "their descendants," as "my descendants," the change being, as we held, necessary to effectuate the general intent, and being indicated by a clear explanatory context. But upon a thorough examination of this will, we are unable to agree with the contention of the appellants, who have, as we think, concentrated their analysis upon the devises to the two daughters and their issue, and have excluded the light we think is thrown upon the question by other portions of the will.

If there were but the son and the two daughters and their issue to be provided for, and the estate was devised to them alone in the terms used in this will the argument of the appellants would be much stronger, because there would be no context from which to glean anything to countervail the natural inference that the children of Anna, on her death, should take an indefeasible estate. But here there are others provided for, and there is a context which we think countervails the inference sought to be drawn. The testor had three children—one son and two daughters, and three grandchildren, one grandson, the sole representative of his deceased mother, and two granddaughters representing their deceased mother. There were in all, five stocks of the testator's blood all made the objects of his bounty, but not all in equal measure, and in dealing with these stocks the testator made a marked distinction between their different degrees. To each of his three grandchildren he gave a pecuniary legacy of $10,000—about one thirtieth of his estate—but he gave the whole residue of his estate

to his three children, giving to each about nine-thirtieth's of the whole. These bequests to his grandchildren were but mere recognitions that they were representatives of deceased daughters, and these disposed of, he proceeded to care for his children with equality of bounty, but not of control and enjoyment. In giving a fee to his son, and in restricting his daughters to life-estates in trust, with remainder to their issue, and in default of such issue, with devises over, he consciously or unconsciously bore witness to the tenacity with which men often cling to the ancient preference of the law for male issue. It is transparent that his son was the favored heir, and that he designed to increase as largely as possible his interest in the whole estate in event of the failure of any one of the other stocks provided for, and it may well be doubted, if he had had no son, whether these devises over, as to any of the grandchildren, would have been made. In the first clause of his will making these bequests to the three grandchildren, he directed that his executors should pay them the principal sums as they respectively reached twenty-one years—paying the interest in the meantime to their guardians—but their estates were none the less vested, and if any such grandchild had died under twenty-one, leaving issue, such issue would have taken the estate from the parent and not from the testator. He then added: "In case of the death of any of said grandchildren without issue, and before attaining the age of twenty-one years, it is my will and desire that the bequests to the one so dying, shall pass to such persons as by the then existing laws of Maryland would take the same as the distributees of my personal estate." This provision is deliberately and intelligently made in precisely the same language as is used in the devise over, in case of the death of any of Anna's children under twenty-one and without issue, except that in the former, as only money is bequeathed, the bequest over is to the testator's distributees only, while in the latter clause, as both real and personal estate is dealt with, the devise and bequests over is to the testator's

heirs-at-law or distributees.  If it be said that as Harry L.
Slingluff was the sole representative of his deceased mother,
his share, on the contingency mentioned, must pass out of
the mother's line, and on his death intestate would pass just as
is here provided; the same cannot be said as to Margaret and
Alice Smith, who were both representatives of their deceased
mother, and who would be heir to each other. Yet the tes-
tator provided that on the death of either of these without
issue and under twenty-one, the share of the one so dying
instead of continuing in the mother's line and thus going
to the sister, should pass over to the testator's distributees.
This will is thus deliberately impressed at its very outset,
with the policy which it is argued was not intended, and the
operation of which is sought to be avoided by construing
" *any* " as " *all* " in the later clause.    The idea which is
constantly recurring in this will (except as to the son's
share which is unfettered) is to send back the respective
shares for redistribution among the several stocks upon the
happening of death without issue and under twenty-one.
Seven times is this purpose repeated ; five times in the will,
and twice in the codicil ; 1st, in reference to the bequest to
Harry L. Slingluff, whose modest share, if it were passed
over to Margaret and Alice Smith, would not give them
an undue share of the testator's estate.    2nd. In the be-
quests to Margaret and Alice Smith, who were not per-
mitted to be heir to each other, but whose respective shares
on the contingency mentioned, were to pass over under the
same iron rule to all the stocks.    3rd and 4th. In the re-
spective devises to Margaret W. Dorsey and Anna W.
Banks.    5th. In the devise over of the share of any child
of Margaret W. Dorsey and Anna W. Banks, after their
mother's death, on the same contingency.    6th. In the de-
vise over in the codicil of the Delaware farm; and 7th, in
the devise over in the codicil of the Franklin street house.
And it is a significant fact in this connection that this limi-
tation of remainders to the children of Margaret and Anna,
as defeasible fees, with devises over to *the whole family*,

was not made applicable to the Delaware farm and the Franklin street house, which were the homes of the children of these daughters respectively, since such a devise over would have been inconsistent with the preservation of the home for the other minor children, and its omission in these instances affords a strong presumption of its deliberate application in the instances mentioned. It must also be borne in mind that the testator, in the two clauses we have been comparing, was dealing exclusively with grandchildren, and the presumption is a strong one that the same language, in the two clauses, should receive the same construction as to each member of the class with which he was dealing, viz., grandchildren, so that whether we confine our inquiry to the two clauses, which relate to the class of grandchildren, or extend the inquiry to the whole will, in search of a general intention to support the appellant's contention, we are equally unable to discover sufficient warrant for the adoption of their view, and we must agree with the Court below, that W. Frank Godwin took a contingent remainder in fee, which became vested upon his mother's death, subject to be divested by the operation of the executory devise over if held valid.

2nd. The appellants further contend that the executory devise over as to W. Frank Godwin's share is invalid, because of the well-settled proposition in the construction of wills, that wherever a testator by one clause gives an absolute estate to a devisee, any attempt by a later clause to cut down such absolute estate, will be void, as inconsistent with the absolute estate previously created, and they rely, to sustain this proposition, upon three Maryland cases. *Hammett* v. *Hammett*, 43 Md. 307; *Benesch* v. *Clark*, 49 Md. 504; *Coombs* v. *Coombs*, 67 Md. 17.

The abstract proposition thus stated is a sound one, but we have nevertheless no doubt that it is not applicable to the present case, nor do we doubt that the executory devise over in this case is valid and operative. If it is intended, however, to claim as a result of the above proposition, that

because the power of disposition is not expressly prohibited in a devise, that an executory devise over is void, the proposition cannot be maintained. The case of *Hammett* v. *Hammett, supra,* seems to have been cited by the appellants with this view, but it will be seen upon examination that no such doctrine was held. The only question decided was, which one of two contingencies, possible to be adopted, should be adopted, as that upon which the fee-simple should vest, and it was held that one should be adopted which would not disinherit the testator's children.

In *Benesch* v. *Clark,* 49 Md. 504, the devise was of two houses to the wife, "for her life, to be disposed with as my said wife sees fit at her decease." The widow assigned one of the houses which were leasehold, and two questions arose. 1st. Whether she took more than a life-estate in the two houses ; and 2nd, whether the power of disposition was well-executed by the deed of assignment, and it was held "that where an estate is given to a person generally *with power of disposition,* such gift carries the entire estate, and the devisee takes the property absolutely," but that the rule is different where the devise is expressly *for life,* with power of disposition annexed, and it was accordingly held that the widow took but a life-estate, and that the power of disposition was effectually executed by the deed of assignment. In *Coombs* v. *Coombs,* 67 Md. 17, the devise was "to my son G., to sell and convey the same in his lifetime or to dispose of the same by last will and testament. But should he die without issue and without having disposed of the same by sale, or by will, then I give and devise said estate to J. and T.," and it was held that "an absolute ownership or capacity to sell in the first taker, and a vested right by way of executory devise in another, which cannot be affected by such alienation, are incompatible estates and repugnant to each other and the latter is to be rejected as void." But the Court expressly declared in that case " An executory devise may be limited after a fee-simple, but in such case the fee must be made determinable on some contingent

event." The case of *Foos* v. *Scarf*, 55 Md. 301, is to the same effect.

The authorities we think are clear that the devise over we are considering is valid. In *Doe & Hunt* v. *Moore*, 14 East. 601 ; where the devise was to G. M. in fee when he attains 21 years of age, and if he die under 21 then over, it was held that attaining 21 was not a condition precedent to the vesting of the fee, but the dying under 21 was a condition subsequent on which the fee was divested. *Washburn on Real Property*, vol. 2, page 629, 5th edition, cites the case of *Bromfield* v. *Crowder*, 1 Bos. & P. N. R. 313, where the devise was to E. & J. for their lives successively, and after the death of the survivor, to A. B., if he lived to attain the age of 21 years, but if he died before that age, then to C. B., and it was held that the remainder vested at once in A. B. in fee, subject to be defeated if he died before 21, and then it would pass not as a remainder, but as an executory devise to C. B.

In *Jackson* v. *Robins*, 16 John. 585, CHANCELLOR KENT said, " The point is, where an estate is given to a man and his heirs *with a power of disposal at his own will and pleasure*, it carries with it an absolute ownership repugnant to any limitation over and destructive of it," and he adds, "all executory devises may be said in some degree to depend upon the will or discretion of the owner of the precedent estate. If a devise be to A. in fee, but if he die without issue living at his death, then over to B. it is in his volition and power (morally speaking), not to marry, or to marry and have issue, and so avoid the devise over, but these distinctions have nothing to do with the simplicity and good sense of the rules we are discussing. The first taker in these special cases has not an absolute discretion and free agency, within the meaning of the rule, as one has who can sell and assign when and to whom, and for what purpose he pleases. This is what we understand by a right incompatible with an executory devise, and this is what we are to understand by the books when they speak of a limitation over

as being void, because inconsistent with such an absolute power and dominion in fee." A very full and instructive discussion of the law on this point is found in the opinion of the Court in *McRees, Adms.* v. *Means,* 34 Ala. 349, where it is said, " What is meant by the absolute power of disposition which defeats an executory devise, can best be ascertained by referring to the reasons upon which the principle is founded. Kent says, ' the executory interest is wholly exempted from the power of the first taker. If therefore there be an absolute power of disposition given by the will to the first taker, the devise over is void, because inconsistent with the absolute power of disposition in the first taker.' The absolute power of disposition which defeats the limitation over, is therefore a *power to destroy it by alienation,* and not merely a *power to alien* the estate vested in the first taker. There is therefore no repugnancy because the estate of the first taker is to him and his heirs forever in feesimple. *These words do nothing more than appropriately describe a title in fee-simple.*" These authorities are as emphatic, as their reasoning is clear and conclusive, and leaves no room to question the validity of the devise over in the present case.

3rd. The appellants next contend, that the devise over of W. Frank Godwin's share is void and inoperative after the vesting of the remainder in him on his mother's death, and they rely for this position upon *Reiff* v. *Strite,* 54 Md. 300, and the class of cases to which it belongs, and we have already recognized that case, *for the point actually decided therein,* in holding that W. Frank Godwin took a contingent remainder in fee which *vested* on his mother's death ; but the conclusion sought to be drawn by the appellants by no means follows as a result of our so holding. This contention might be sustained if this will created alternative contingent remainders in W. Frank Godwin and in the heirs and distributees of the testator, as in *Larmour* v. *Rich,* 71 Md. 369, and in *Demill* v. *Reid, idem,* 188, because the vesting of one alternative contingent re-

mainder renders impossible, and thus defeats the other alternative remainder.    In both the last mentioned cases the trust which supported the alternative remainders was expressly continued until the happening of contingency which should determine the alternative, but here the trust which supported the remainder to Mrs. Godwin's children ceased on her death, and the devise over to the testator's heirs and distributees could not operate as an alternative contingent remainder, but only as an executory devise.

4th.  The final contention of the appellants is that even if this devise is to be regarded as operative and valid at all times, then that clause, and the preceding one which gives Mrs. Godwin's share to her surviving issue, must be construed together, and that the result of the operation of the two clauses, when so construed, is to create alternative contingent remainders in her children, and in the testator's heirs which became vested in the children at her death.    This is but another form of presenting and urging the same point we have just considered, and may be dismissed without further consideration, beyond the observation that the utmost effect which can be given to the vesting of these remainders in Mrs. Godwin's children is to create a fee in them respectively, and that there can be no more objection to the creation of an executory devise after a fee thus acquired, than after a fee acquired by any immediate and absolute devise.

We have thus considered, at perhaps greater length than was necessary, the questions raised in the construction of this will, in deference to the very full and able argument made by the respective counsel, and we now come to the remaining question determined by the Court below, and growing out of the claim made by the trustee in insolvency of Andrew Banks, to his share of W. Frank Godwin's one-sixth part of his mother's estate.    This question was argued so ably by all the counsel representing this branch of the case, and with such zeal and ingenuity by the trustee in insolvency as to make the question involved, appear at first presentation, one of great doubt; but upon examination of

the authorities cited, and of the legal principles upon which they repose, we think it is free from any serious difficulty. The trustee of Andrew Banks plants himself upon the broad and emphatic language of the insolvent law, the letter and spirit of which he asserts, concur to sustain his claim, while on the other hand it is contended in behalf of Banks that neither the letter nor the spirit of the insolvent law sustain the trustee, and that the decisions in this State and elsewhere are adverse to the trustee. Without attempting to follow counsel in a critical analysis of the various insolvent laws of the State from time to time, or in an examination of the authorities cited, we are of opinion that the learned Judge of the Circuit Court was correct in declaring that devisability, descendibility and assignability, is the true test of whether the property or right passes to the trustee in insolvency, in the absence of a statute otherwise plainly providing. Our insolvent law is the only statute which can be supposed to affect the question. It provides that " all the *property and estate of every description, rights and claims* of the insolvent, shall vest in his trustee," but it does not attempt to define any of these terms, either by an enumeration of the various classes of estates, claims or rights, or by any generally descriptive language, but leaves all questions that may arise thereunder, to be determined according to the course of the common law. The common law declares all contingent estates, when the person to take is not ascertained, to be a mere possibility not coupled with an interest, and to be neither devisable, descendible, alienable by voluntary conveyance, nor subject to execution. 4 *Kent's Comm.* 261; 2 *Washburn Real Prop.* 238.

Such a naked possibility, is in law neither an estate, property, right nor claim. One having such a possibility, may *in the future* have a right or claim, but cannot be correctly said to have any *existing* right or claim. This was held in *Jackson* v. *Waldron*, 13 Wendell (prior to the statute of New York, making all contingent estates descendible and devisable), where SENATOR TRACY, in the opinion

which prevailed, said, "a mere naked possibility is in law no *interest*, and there was nothing which could pass by his release, *ex nihilo, nihil fit*, a mere possibility is not *a right in being, but an abstraction too remote and uncertain for any form of conveyance to reach."* 13 *Wendell*, 221–222. In the absence of a statute changing the common law these principles are as sound and satisfactory at this day in Maryland as they were in New York in 1834, when they were announced there. While the precise question now presented has never been before this Court, the principles upon which it must be decided have been under consideration in two comparatively recent cases. *Brooks* v. *Ahrens*, 68 Md. 222, and *Kelso* v. *Stigar*, 75 Md. 376.

In the former case the Court asked, "What right, either vested or contingent, *existed* in the bankrupt at the date of his bankruptcy declared, to receive reimbursement for the enhanced or war premiums paid by him during the Civil War?

* * The statute is clear that it was only *existing* rights that were contemplated by it, and were intended to be transferred to the assignee. But here the facts show that there was not even a possibility of interest which might thereafter beneficially arise from any *existing vested, or even contingent* right." The appellants would have us adopt their inference from the last sentence of the above citation, that if there had been a bare possibility of a *future right* that the Court intended to convey the idea that it would have passed to the assignee, but this would be to strike out of the language of the Court the recurring and qualifying word "*existing*," which could only appropriately be employed in that connection, to designate and *restrict* the character and quality of the right which alone could pass to the assignee. The meaning of the Court in this passage, as we read it, is identical with the meaning of the language in 13 *Wendell*, "*a right in being.*"

In *Kelso* v. *Stigar*, 75 Md. 398, the insolvent act under consideration was the Act of 1774, ch. 28, which passed to the assignee estates in possession, reversion, and remainder,

while all mention of these is omitted from the present insolvent law, and it was strongly intimated that a mere possibility of a reverter would not pass to an insolvent trustee. The appellant relies upon *Phelps* v. *MacDonald*, 99 U. S. 298, but he can derive no support for his contention from that case, since the claim there was for 2,000 bales of cotton, the property of claimant destroyed by the agent of the government, and while the inability to sue the government made *recovery doubtful, his interest* and right in the property destroyed was an *existing* one—*one in being*—and he or his assignee was identified as the person then entitled thereto. He also relies upon *Williams* v. *Heard*, 140 U. S. 549, where a claim decided by the Court of Commissioners of Alabama Claims to be a valid claim against the United States was held to be property and to pass to an assignee of a bankrupt; but there, as in 99 U. S., there was no uncertainty as to the person who would be entitled to the award when made ; the only uncertainty was whether the award ever would be made and in delivering judgment the Court said : " Who can doubt but that the right to prosecute this claim would have survived to their legal representatives, had the original claimants been dead at the passage of the Act of 1882 creating the Court of Commissioners of Alabama claims, or that the money if recovered would have been distributable as assets of the estate ?" Here, if Andrew Banks had died before W. Frank Godwin, no right would have passed from or through him to his heirs or administrators, and there would have been no assets as of his estate. His heirs and distributees would have taken directly from the testator, as answering to the description of heirs and distributees of the testator at that time. But whatever conflict may exist between that case and the case of *Brooks* v. *Ahrens*, if we waive all questions as to the uncertainty of the person entitled, and confine our consideration to the character of the right, the absence of any enforceable right at the date of bankruptcy, we are of opinion that the principle laid down in 68 Md. is the true principle

and that we should be governed by it.    The rule that the right is not transmissible where the person who is to take is not ascertained, is so fully settled and recognized by text-books and decided cases, that the trustee of Banks sought to take this case out of its operation by an ingenious argument that no change could be made by any statute which would affect the status of the heirs of the testator, and that the heirs indicated to take at the death of W. Frank Godwin are, as a class, the same parties that are specifically named in the preceding clause as the heirs at the date of testator's death, and that thus there is no uncertainty as to those who are to take ; and he cites the case of *Dunn* v. *Sargent*, 101 Mass. 336, on this point, but it appears on reading this case that the Court adhered to the rule above, because they held that the persons to take were certain, " being her own children and *named in the will.*"

Counsel for Mrs. Dorsey relies upon *Putman* v. *Story*, 132 Mass. 205, also, to show that there is no uncertainty here as to the person who is to take.    There the devise was to a daughter, Frances Bowles, for life, and after her death to be equally divided between *her heirs*, and it was held that the children of Mrs. Bowles, as they were born, took successive. contingent remainders (as in *Albert's case*, 68 Md. 352) liable to be defeated by their death before their mother, and that such vested interest of a child, in such contingent remainder, would pass to his assignee in insolvency, subject to the same contingency.    But we find no analogy between that case and the present, for that case stops just short of where this case begins.    It is authority for holding that if W. Frank Godwin had become insolvent, and there were no executory devise over that his interest would have passed to his assignee, subject to be divested by his death before his mother.    But there is nothing in the decree here appealed from in conflict with *Putman* v. *Story*, and there is a wide difference between a *vested interest* in a contingent *remainder, which is an existing estate*, and a contingent interest as heir at law in an executory devise, an

estate to arise *in futuro* and by way of *substitution*, and to vest only in those who answer to the description of heirs-at-law at a given future time.    This distinction was clearly recognized in *Crisp* v. *Crisp*, 61 Md. 149.    There the devise was to the wife for life " and after her death to go to such persons as would by the *now* existing laws of Maryland be entitled to take by descent from me," and JUDGE STONE said, " It will be observed there is no expression whatever that indicates that the testator intended to fix on any *future* period for the vesting of this legacy.    He does not use the word *then*, but says *now* existing.    Those persons who now would take by descent, seem to be the objects of his bounty, and not those who might be in existence at some *future time.* "    Agreeing as we do, upon a careful review of the whole case, with all the conclusions of the Court below, the decree will be affirmed, the costs to be paid out of the one-sixth part to be allotted to W. Frank Godwin, the disposition of which is the subject of this controversy.

*Decree affirmed.*

(Decided April 1st, 1898).