## SCOTT *v.* FIRST NATIONAL BANK OF BALTIMORE Administrator, Etc., et al.

[No. 165, September Term, 1960.]

*Decided March 15, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, PRESCOTT, HORNEY and MARBURY, JJ.

*Norwood B. Orrick,* with whom was *Louis L. Bucciarelli*
on the brief, for the appellant.

*Walter C. Mylander, Jr.,* and *Charles C. W. Atwater,* with
whom were *Douglas H. Gordon, Thomas A. Garland* and
*Perry D. Trafford, Jr.,* on the brief, for the appellee Louis
Cohen, guardian *ad litem* of Virginia Wilmer Scott, a minor.
No brief and no appearance for the appellee First National

Bank of Baltimore, Administrator of the estate of Thomas Alexander Scott, deceased.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of an equity court declaring valid the assignment of a one-half expectancy from the estate of the assignor's father, then living, in favor of the assignor's daughter, Virginia. The assignment was alluded to in *Kelly v. Scott*, 215 Md. 530, 532, although that case is not in point here, and the effect of that decision was modified by subsequent legislation. See Code (1960 Supp.), Art. 16, sec. 135A (ch. 93, Acts of 1958).

The facts are not in dispute. Wilmer Scott became enamoured of another woman in 1947 and told his wife, Grace, he intended to leave her. The marital home was in Connecticut. On January 31, 1948, Wilmer and Grace entered into a separation agreement whereby she was to have custody of the child and he agreed to pay $250 per month for the support of Grace and Virginia, then just two years of age. In the event of Grace's remarriage he agreed to pay $150 a month for Virginia's support until she reached the age of twenty-one. Wilmer transferred to Grace his interest in their house at Rowayton, Conn., subject to a $10,000 mortgage which she assumed, his 1935 car, his modest bank account, his interest in a bank partnership trust, and a $10,000 service life insurance policy, provided Grace continue the payments. In a separate instrument he assigned under seal to Virginia one-half of his expectancy in his father's estate "for the consideration of one dollar and other valuable considerations received to my full satisfaction from my wife * * * on behalf of my daughter". Grace sued for divorce in August, 1948, and obtained a decree *a vinculo* on March 11, 1949, from the Fairfield County Court. The decree did not mention the assignment, although the decree for alimony and support incorporated the provisions set out in the separation agreement, but the agreement was not made a part of the decree. Evidently the separation agreement was exhibited to the court, but it was not shown that the assignment was so exhibited.

Wilmer married the other woman in 1949, but this marriage ended in a divorce and another alimony decree against him. In 1952 he married his present wife, by whom he has two children. Grace remarried in 1950. Wilmer did not comply with the support decree, indeed, he has made no payments at all since 1952. In March, 1959, Grace recovered a judgment for over $12,000 in back payments. On September 11, 1958, Wilmer's father died intestate. At the time of his death and since 1936 the father, Thomas A. Scott, had been mentally incompetent and committed to the Sheppard & Enoch Pratt Hospital in Baltimore, Maryland. He left surviving him two children, of whom Wilmer was one. His administrator, the First National Bank of Baltimore, filed an inventory showing a personal estate of about $490,000. It brought this proceeding by way of interpleader.

Wilmer was in financial straits at the time of the separation in 1948. He was earning about $300 a month and receiving $150 a month from the committee of his father, but he had numerous unpaid bills and unpaid small loans. Although he was an educated man he had difficulty in holding jobs, he claims, because of the fact that he suffered from epilepsy, although there was other testimony that it was due to his excessive drinking. Whatever cash he turned over to Grace was used to pay bills then unpaid. His history is one of improvidence and living beyond his means.

The parties agree and concede that the validity and effect of the assignment are to be determined under the law of Connecticut, where it was executed and delivered. That, of course, is the general rule applicable to foreign contracts dealing with personalty. See Restatement, *Conflict of Laws* § 332, and *B. & O. R. R. Co. v. Glenn,* 28 Md. 287, 321. It is also agreed that at common law the transfer of a mere possibility or expectancy, not coupled with an interest, is void. *Dart v. Dart,* 7 Conn. 250 (1828); cf. *Keys v. Keys,* 148 Md. 397, 400. The parties further agree that under some circumstances, at least, equity will enforce the assignment of an expectancy after the death of the ancestor despite its invalidity at law. It is generally recognized that since the relief sought is in

the nature of specific performance of a contract, equity will enforce the contract only where it is fair and equitable and supported by an adequate consideration. *Keys v. Keys, supra;* 6 Williston, *Contracts* (Rev. ed.) § 1681A; Pomeroy, *Equity Jurisprudence* (5th ed.) §§ 953a and 1287; 1 Bogert, *Trusts* § 112; 1 Scott, *Trusts* (2d ed.) § 86.1; Restatement, *Property* § 316. See also Notes, 17 A.L.R. 597, 44 A.L.R. 1465, and 121 A.L.R. 450, and Notes, 25 Colum. L. Rev. 215, and 35 No. Car. L. Rev. 127, 131. The appellant contends that the necessary consideration is lacking in the instant case.

Both parties cite and rely upon the case of *Hooker v. Hooker,* 32 A. 2d 68 (Conn.), but they place a different interpretation upon it. The facts are strikingly similar to those in the instant case, but the posture of the case was somewhat different. In that case the Hookers executed a separation agreement in Connecticut in which, among other things, Mr. Hooker agreed to pay a certain sum to his wife in lieu of support and to establish two *inter vivos* trusts in favor of the minor children. He further agreed to assign in trust for each child any amounts he might thereafter receive from his mother's estate. It did not appear that any particular consideration passed to the husband in exchange for this agreement. Mrs. Hooker subsequently obtained a divorce in Nevada, and the decree incorporated the terms of the separation agreement by reference; the decree declaring it to be "fair, just and equitable." After the death of the mother the ex-wife sued to enforce the assignment of the husband's interest in his mother's estate.

The Connecticut court first held that the husband's contention that the agreement merged in the Nevada decree and that no action could be brought upon the agreement, as such, was not raised in the trial court and could not be raised for the first time on appeal. The authorities seem to hold generally that a property settlement does not merge in a decree. See Note, 32 A.L.R. 2d 1145. But see *Whitney v. Heublein,* 139 A. 2d 605 (Conn.). The court in the *Hooker* case, *supra,* also held that the trial court was correct in excluding testimony attacking the Nevada decree because, although the

question of domicile would ordinarily be open to show a lack of jurisdiction, the husband, who had remarried, was not in a position to contest the divorce under the doctrine of clean hands, if not by way of estoppel. The court also stated that the husband did not contend that there was any public policy against property settlements made in view of divorce proceedings instituted or determined upon, if submitted to and approved by a court with full opportunity for scrutiny, as would justify the Connecticut court in disregarding a decision of the Nevada court that the agreement was valid. It may be noted that this was stated as a contention and not as a holding. The appellant in the instant case contends that the Connecticut court relied upon the Nevada decree to establish the validity of the agreement, as a matter of collateral estoppel by judgment, if not as *res judicata*. For a statement of the principle, see Restatement, *Judgments* §§ 68 and 70.

We think that contention is untenable. The suit was on the agreement, and although the court stated that the wife claimed that the Nevada decree conclusively established the validity of the agreement, whereas the husband claimed its approval by the Nevada court was irrelevant, the court made no express reference to estoppel by judgment. Instead, the court discussed, in connection with the agreement to place additional sums in trust for the children, the husband's claim that the agreement was void as one for the transfer of an expectancy. Citing the case of *Brown v. Brown,* 66 Conn. 493, 498, 34 Atl. 490, 491, the court stated that an agreement to assign an expectancy is enforceable in equity and that the rule is supported by the great weight of authority "where the agreement is fairly made upon adequate consideration and without oppression or unjust advantage being taken of the heir." The court discussed authorities, pro and con, as to the necessity that the ancestor have knowledge of the purported assignment but said: "The danger that such an agreement will defeat his intent is not so great as to require that his knowledge of its existence be proved in order to render it valid." The court further said: "We have no statute in this state changing the common law in such a situ-

ation as the one before us, and our courts have jurisdiction in equity to enforce the agreement by compelling compliance with it."

It is true that the adequacy of the consideration was not discussed. But the court did discuss the validity of the agreement and its enforceability in Connecticut. It would hardly have been necessary to discuss the point at all if the Nevada decision were given conclusive effect. If the Connecticut court did not discuss the adequacy of the consideration because the point was not raised, as the appellant suggests, and the question was left open, we must still determine, as best we can, what the Connecticut court would hold, were the question presented.

All of the authorities seem to agree that a gratuitous assignment is unenforceable, because there is no contract to enforce. 1 Scott, *Trusts, supra,* at p. 655. Some courts, notably in Kentucky, refuse to enforce any agreements to assign an expectancy because of a public policy against sales to moneylenders and the danger of overreaching in the case of impoverished prospective heirs. Others enforce agreements to sell, provided the consideration amounts to a fair equivalent. Some of the commentators suggest that the adequacy of consideration is only one element in determining whether equity will enforce and that contracts to assign an expectancy should not be placed in any special category. See the Note, 25 Colum. L. Rev., *supra.* In this connection we may quote the language of Judge Hammond in *Ledingham v. Bayless,* 218 Md. 108, 115, a case involving a contract to make a will, where it was said: "As in other contracts, the parties may agree on the surrender or acquisition of any legal rights as consideration, and the adequacy of such consideration is material only as an element of fraud or undue influence or as one of the factors which a court will take into consideration in determining whether or not to grant specific performance." Cf. *Sidor v. Kravec,* 66 A. 2d 812 (Conn.). In 1 Scott, *Trusts, supra,* at p. 654, the learned author states that the courts uniformly find adequate consideration present in the case of marriage settlements and separation agreements. We find noth-

ing in the Connecticut cases cited to indicate that a property settlement in contemplation of divorce would be unenforceable because lacking in consideration amounting to equivalence. We think the cases cited point in the opposite direction.

We do not suggest that any weight should be attached to the seal or recited consideration. Nor do we suggest that love and affection alone would suffice, although there are cases that suggest a more liberal rule in the case of family settlements. See 6 Williston, *Contracts, supra,* and *Warner v. Warner,* 1 A. 2d 911 (Conn.). Of course, both parties in the instant case were concerned with the welfare of the child Virginia. Grace assumed the burden of the care and education of Virginia, over and above the rather small sum stipulated for her support. It is true that the divorce court could not be bound by the parties' agreement, insofar as it might affect the welfare of the child. But the wife may well have tempered her demands because of the assignment in order to insure that the child would receive a share of the expectancy which might otherwise be frittered away. She also assumed liability for the unpaid bills and loans and the mortgage. We find adequate consideration in these undertakings. There is no claim of fraud or overreaching, and the chancellor found that the agreement was not unfair or inequitable under the circumstances. The bargain was at arm's length and the husband had an opportunity to seek independent advice.

The appellant argues that the real consideration was that the wife should obtain a divorce and thus permit him to marry the paramour. We find nothing collusive in the separation agreement. She undoubtedly had grounds for divorce before the separation, and the Connecticut cases seem to clearly hold that a property settlement in contemplation of divorce is not invalid. The appellant argues that this is true only if the settlement is submitted to and approved by the divorce court. As we read the cases the requirement is simply that it not be concealed from the divorce court, because concealment may have a material bearing upon the issues presented. In this connection see *Mills v. Mills,* 179 Atl. 5 (Conn.);

*Maisch v. Maisch,* 87 Atl. 729 (Conn.); cf. *Koster v. Koster,* 81 A. 2d 355 (Conn.). That was not the situation in the instant case.

The passage we have quoted from the *Hooker* case is a sufficient answer to the appellant's contention that the assignment is invalid because made without the knowledge of the assignor's father. It is true that it was not shown in that case that the mother was unaware of the agreement, although knowledge was not affirmatively shown. But we think the Connecticut court indicated that it would follow the weight of authority to the effect that knowledge is immaterial. See Restatement, *Property* § 316, comment j, and *Keys v. Keys, supra.* See also *Hofmeister v. Hunter,* 283 N. W. 330 (Wisc.), where a conveyance was enforced although the ancestor was insane.

*Decree affirmed, with costs.*