## SUMMERS ET AL. *v.* FREISHTAT

[No. 154, September Term, 1974.]

*Decided April 10, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Michael P. Crocker*, with whom was *Paul Walter* on the brief, for appellants.

*Michael L. Schwartz* for appellee.

SINGLEY, J., delivered the opinion of the Court.

This case involves the question whether the claims of two judgment creditors take precedence over that of the assignee of a partial interest in a cause of action to be instituted subsequent to the assignment by the creditors' debtor against another person. In Superior Court of Baltimore City (Howard, J.), the assignee prevailed, and the judgment creditors have appealed. We affirm.

A brief chronology of events is helpful to an understanding of the problem.

12/19/68 Charles L. Summers, one of the appellants, obtains judgment for $22,500.00 plus interest and costs against Robert L. Taylor.

1/2/70 Robert L. Taylor and Zena Taylor, his wife, assign to the appellee David Freishtat, their lawyer, an 80% interest in any judgment which the Taylors may recover in a suit against The Equitable Trust Company to be instituted in the Taylors' behalf by Freishtat. The Taylors also agreed to pay all out-of-pocket expenses thus incurred.

11/16/70 Suit is filed by the Taylors against The Equitable Trust Company.

6/9/71 Albert Gross, the other appellant, obtains judgment for $104,800.00 plus interest and costs against Robert and Zena Taylor.

6/17/71 Albert Gross lays attachment on judgment in hands of The Equitable Trust Company.

5/23/73 This Court reverses Circuit Court for Harford County and enters judgment

against The Equitable Trust Company in favor of Robert and Zena Taylor for $20,000.00 with interest from 2/26/68. *See Taylor v. Equitable Trust Co.*, 269 Md. 149, 304 A. 2d 838 (1973).

7/12/73 Charles L. Summers lays attachment on judgment in hands of The Equitable Trust Company.

8/6/73 Appearance of The Equitable Trust Company as garnishee. Confession of assets ($20,000.00 plus interest and costs) filed in Gross and Summers attachment cases.

8/16/73 David Freishtat files claim for $26,736.89 under assignment.

11/5/73 The Equitable Trust Company pays $29,425.24 into court to stop running of interest on judgment.

2/13/74 On motion of David Freishtat claims of Albert Gross and Charles L. Summers are consolidated.

6/26/74 Motion of David Freishtat, claimant, for summary judgment in his favor granted.

In this appeal, Summers and Gross assign four reasons why the judgment of the trial court should be reversed. We now turn to a consideration of these contentions.

(i)

"The so-called 'assignment' of 1970, being but an attempt to transfer a mere possibility or expectancy, not coupled with an interest, in a thing that was non-existent until more than three years after the attempted 'assignment;' namely, in May, 1973, was, therefore, void."

Summers and Gross rely on statements found in our cases that at common law the transfer of a possibility or expectancy, not coupled with an interest, was void, *Scott v. First Nat'l Bank*, 224 Md. 462, 465, 168 A. 2d 349, 351 (1961);

*Keys v. Keys*, 148 Md. 397, 400, 129 A. 504, 505 (1925); *In re Banks' Will*, 87 Md. 425, 440, [*Godwin v. Banks*,] 40 A. 268, 273 (1898); *Hamilton v. Rogers*, 8 Md. 301, 319 (1855).

What this argument overlooks is the modern rule, evolving from the practices of equity, *Adair v. Winchester*, 7 G. & J. 114 (1835); 3 S. Williston, Contracts § 410, at 15-18 (1960), recognizing that a chose in action, whether arising in tort or ex contractu, is generally assignable, 6 Am. Jur. 2d *Assignments* §§ 27-30, at 211-14 (1963); 6 C.J.S. *Assignments* § 5, at 1052-53 and §§ 31-32, at 1080-81 (1937). *See Welch v. Mandeville*, 14 U. S. 233 (1816), *see especially* 14 U. S. at 237 note a. *See generally* 1 Restatement of Contracts § 148(2)(a), at 178 and § 151, at 181-82 (1932). The only limitation, in the absence of a contrary statutory provision,[1] is that the right of action be of a sort which would survive the death of the assignor and pass to his personal representatives, 4 A. Corbin, Contracts § 886, at 559-63 (1951).

*Scott v. First Nat'l Bank, supra*, 224 Md. 462, while applying Connecticut law, recognized that an assignment of one-half of what the assignor would receive on the death of his father, intestate, would be enforceable in equity, as did *Keys v. Keys, supra*, 148 Md. 397. *Compare In re Banks' Will, supra*, 87 Md. at 440, where a contingent interest under a will, an interest which was neither devisable nor descendible, was held not to pass to the insolvent beneficiary's trustee. *Hamilton v. Rogers, supra*, 8 Md. 301 stands for what has become the rule of our cases: that the actual or potential existence of a debt or obligation is sufficient to be the subject of a valid and enforceable assignment, since equity will enforce an assignment resting "in mere possibility only."[2] *See In re Talbot Canning Corp.*, 35 F. Supp. 680, 683 (D. Md. 1940).

---

1. *E.g.*, the restriction on the assignment of wages imposed by Maryland Code (1957, 1968 Repl. Vol., 1974 Cum. Supp.) Art. 8, § 6. *See* Shaffer v. Union Mining Co., 55 Md. 74 (1880).

2. An even more persuasive example is found in Speelman v. Pascal, 10 N.Y.2d 313, 178 N.E.2d 723, 222 N.Y.S.2d 324 (1961), where Gabriel Pascal, who controlled a license permitting him to produce a musical version of "Pygmalion," had agreed in 1954 to give his secretary a stated percentage of his profits from any stage and motion picture productions. Several months after writing the letter to his secretary, Pascal died without having

*Seymour v. Finance & Guaranty Co.*, 155 Md. 514, 531-33, 142 A. 710, 716-17 (1928) upheld an assignment of money to be earned in the future performance of an existing construction contract. *Baust v. Commonwealth Bank*, 158 Md. 280, [*Baust v. Fairfield Farms Dairy,*] 148 A. 236 (1930) upheld an assignment of payments to be made by a dairy to a milk producer, implying the existence of a contract from a course of dealing. To the same effect is *Maryland Cooperative Milk Producers v. Bell*, 206 Md. 168, 110 A. 2d 661 (1955). *See Yingling v. Smith*, 254 Md. 366, 255 A. 2d 64 (1969), where we followed the majority rule and held that the right to contest a will was both assignable and descendible.

### (ii)

"In addition, since the so-called 'assignment' was an attempt to split up a claim without the consent of the debtor, it is void."

This argument is derived from two early cases, *Sheppard v. State*, 3 Gill 289, 299 (1845) and *Mandeville v. Welch*, 18 U. S. 277, 286-89 (1820), which are cited in support of the proposition that a creditor cannot assign a portion of his claim, and thus make the debtor answerable to a person or persons other than the one with whom the debtor dealt unless the debtor consents, *see Wilson v. Carson*, 12 Md. 54, 74-75 (1858). In other words, a debtor should not be subjected to the possibility of multiple litigation without his consent, *Whittemore v. Judd Linseed & Sperm Oil Co.*, 124 N. Y. 565, 577, 27 N.E. 244, 246-47 (1891).

Assuming, without deciding, that this is a contention available to a party who is neither the debtor nor stands in his shoes, it is unavailing here. The Equitable Trust Company not only did not raise the issue, but seemingly recognized the possible validity of the assignment, by paying

---

arranged for the musical to be produced. Sometime thereafter, his administrator arranged for the production of "My Fair Lady." The New York Court of Appeals affirmed a summary judgment for the plaintiff, holding that an assignment of funds expected to become due was valid and enforceable.

the fund into court when it was faced with conflicting claims.

### (iii)

"Further, since the assignment attempted was of a tort cause of action which resulted because 'Equitable was negligent in not insisting on written instructions from Taylor' and a 'lack of care [that] certainly caused the loss of the $20,000.00,'[3] such 'assignment' is a nullity as contrary to the common law rule that rights of action for damages for torts are not assignable."

The first answer to this contention is that the modern rule, as we have heretofore pointed out, is that a chose in action in tort is generally assignable, in the absence of a statutory prohibition, if it is a right which would survive the assignor and could be enforced by his personal representative.

Additionally, in *Taylor v. Equitable Trust Co., supra,* 269 Md. 149, there was a three-count declaration: the first, which sounded in the contract, sought a recovery of $20,000.00 and interest; the other two, which sounded in tort, sought damages in amounts of $120,000.00 and $150,000.00, respectively. The recovery was had on the first count under Uniform Commercial Code § 4-103 (5), Maryland Code (1957, 1964 Repl. Vol.) Art. 95B, § 4-103 (5) for negligent breach of contract, as alleged in the declaration.

### (iv)

"Upon the grounds of waiver and public policy, the Appellee forfeited any interest in the cause of action prosecuted, for under Maryland Rule 203, it is mandatory that the 'real party in interest' prosecute an action and the Appellee, as a member of the bar familiar with those rules and as the claimed assignee of the overwhelming (80%) interest in the action, failed to do so."

---

**3.** The quoted matter is taken from the opinion of this Court in Taylor v. Equitable Trust Co., 269 Md. 149, 304 A. 2d 838 (1973).

Maryland Rule 203 is entitled "Real Party in Interest."

"a. *Action in Name of Real Party*.

"An action shall be prosecuted in the name of the real party in interest, except as provided in section b [dealing with actions brought in a representative capacity]."

\* \* \*

"d. *Real Party Made Plaintiff*.

"Where it appears that the action has not originally been filed in the name of the real party in interest under section a, the court may, upon petition of a defendant, order the real party in interest to be made a party plaintiff."

Summers and Gross would have us hold that Freishtat, by failing to disclose his interest in the litigation when the suit was brought, has waived any right which he otherwise would have had to share in the proceeds, and is estopped from asserting his claim.

Freishtat responds with the contention that Rule 240 a, which permits (but does not require) "an assignee of a judgment or any chose in action for payment of money arising out of contract" to bring suit in his own name, gives the assignee an election: to sue in his own name or in the name of his assignor, *see Hampson v. Owens*, 55 Md. 583, 586 (1881).

We think Freishtat has the better of the argument. While it is true that he first disclosed his interest in the litigation more than three years after it was commenced, and while we do not intend to be understood as giving this conduct our *nihil obstat*,[4] we are not persuaded that his rights as assignee were in anywise attenuated. Freishtat's failure to disclose the existence of the assignment in no way

---

**4.** *See* American Bar Association, Code of Professional Responsibility (1969) Canon 5, Ethical Considerations 5-7 and 5-8 at 58-59 and Disciplinary Rule 5-103 at 64-65 as regards the financial interest of an attorney in the outcome of his client's litigation.

411

prejudiced The Equitable Trust Company, or influenced the outcome of the litigation.

*Judgment affirmed, costs to be paid by appellants.*