## DODGE *v.* DETROIT TRUST CO.

1. DESCENT AND DISTRIBUTION—CHILD BORN AFTER EXECUTION OF WILL.

    A child born after execution of father's will and not provided for therein became entitled to her statutory share of his estate the same as if he died intestate (3 Comp. Laws 1929, § 15549).

2. PLEADING—MOTION TO DISMISS.

    On motion to dismiss a bill of complaint, well pleaded allegations not controverted by exhibits attached to the bill must be considered as true.

3. APPEAL AND ERROR—QUESTIONS REVIEWABLE—VALIDATION STATUTE.

    On appeal in suit to set aside settlement agreement in will contest, wherein it is now claimed a statute had been improperly enacted to validate such agreements, such claim is disregarded in the absence of a showing of impropriety as validating legislation is common and such an act speaks for itself (3 Comp. Laws 1929, § 15581 *et seq.*).

---

Protection of future interests resulting from requirements for judicial action binding upon such interests, see 2 Restatement, Property, §§ 180–186.

Effect of subsequent legislation upon contracts illegal when made, see 2 Restatement, Contracts, § 609; 1 Restatement, Contracts, § 286.

Compromise of illegal bargain, see 2 Restatement, Contracts, § 590.

4. SAME—TRUSTS—PLEADING—PUBLIC POLICY—TAXATION.

On appeal in suit to set aside settlement agreement entered into in will contest, claim that contemporaneous agreement rehabilitating testamentary trust was void because made for purpose of avoiding taxes cannot be sustained where facts substantiating such claim do not appear to have been well pleaded and a trust which is established in a legal manner without fraud is not invalid even if its tendency is to keep taxes down.

5. SAME—PLEADING—MOTION TO DISMISS.

Charges made in a bill of complaint which are unsupported by well pleaded facts therein are not considered on appeal from dismissal of bill.

6. JUDGMENT—RES JUDICATA—MOTION TO DISMISS.

The question of former adjudication may be raised by motion to dismiss when such adjudication is set forth in the bill of complaint and is not claimed to have been procured by fraud as such a bill would be subject to demurrer at common law on the ground of *res judicata* and extrinsic proof thereof would not be necessary (3 Comp. Laws 1929, § 14120; Court Rules No. 17, § 7 [1933], No. 18, § 1[c] [1933], and No. 23, § 8 [1933, as amended in 1938]).

7. PLEADING—DEMURRER—CONCLUSIONS OF FACT OR LAW—CONTRADICTORY STATEMENTS—OFFICIAL RECORDS.

Rule that facts well pleaded must be taken as true on demurrer does not extend to conclusions of fact or law, to contradictory statements, nor to allegations contradicting official records attached to the bill of complaint.

8. SAME—OFFICIAL RECORDS—MOTION TO DISMISS.

Allegations of a bill of complaint contradicting official records attached to the bill are not well pleaded and are inadmissible on motion to dismiss, as the official records, not the allegations, are to be taken as true.

9. EVIDENCE—COURT RECORDS.

The record of a court, judicially determined to be entirely regular, must be accepted as the highest and final evidence of the facts involved.

10. PLEADING—SURPLUSAGE.

Mere statements in a bill of complaint that defendant's acts were "unlawful" may be regarded as surplusage.

11. Appeal and Error—Questions Reviewable—Perpetuities—
Suspension of Power of Alienation.

> In suit to set aside a settlement agreement, entered into in
> contest of will under which plaintiff had been bequeathed
> but a small fraction of the amount left his brother and
> sisters, whereby plaintiff had received in the neighborhood
> of 60 per cent. of the amount he would have obtained had
> his father died intestate, decision as to whether or not
> testamentary trust of which nearly 99.9 per cent. of the value
> consisted of personalty was a nullity because of an alleged
> illegal suspension of the power of alienation of a relatively
> small amount of real estate is not made where determination
> of such question is not necessary to disposition of case (3
> Comp. Laws 1929, §§ 12934, 12935).

12. Trusts—Corporations—Equitable    Conversion    of    Real
Estate.

> A testamentary trust directing trustees to organize a corpora-
> tion, thereafter keep control of it, and convey thereto such
> realty as may remain in his estate fixes the character of the
> property as personalty as of testator's death under the doc-
> trine of equitable conversion even though for the time being
> the trustees have failed to carry out the instructions.

13. Perpetuities—Suspension of Power of Alienation—Annui-
ties to Each of a Group Ties Up Estate for But One Life.

> In determining the period of suspension of the power of aliena-
> tion where final distribution is delayed until the death of
> four named children who were to receive life annuities from
> income of the estate, the estate must be regarded as tied up
> thereby for one life, that of the survivor (3 Comp. Laws
> 1929, §§ 12934, 12935).

14. Judgment—Res    Judicata—Compromise    and    Settlement—
Good Faith.

> In suit to set aside settlement agreement whereby plaintiff,
> son of testator, and who had been practically disinherited,
> obtained thereby approximately 60 per cent. of amount which
> he would have received had testator died intestate, plaintiff
> *held*, bound by adjudications made in will contest, incident
> to which settlement agreement was entered into by the parties
> and approved by the court, where contest and settlement were
> in good faith; hence decree approving settlement agreement
> and order of probate court admitting will to probate became
> *res judicata* and binding upon plaintiff.

15. COMPROMISE AND SETTLEMENT—WILL CONTEST—STATUTES.

   A settlement agreement in a will contest which had not been executed on behalf of certain necessary parties before effective date of act authorizing the compromise, settlement, or adjustment of will contests was not binding upon anyone finally at the time such act became effective (3 Comp. Laws 1929, § 15581 *et seq.*).

16. WILLS—CONTEST—SETTLEMENT—STATUTES.

   A statute, procedural in nature, relative to approval by probate court of settlement agreements entered into by parties to will contest wherein minor's rights are involved was properly invoked where will contest involving such rights was pending when statute became effective (3 Comp. Laws 1929, § 15581 *et seq.*).

17. STATUTES—TITLE OF ACT—CONSTITUTIONAL LAW.

   Title of procedural statute relative to compromise, settlement, or adjustment of will contest wherein rights of minors or other legally incompetent persons are involved *held*, not unconstitutional (3 Comp. Laws 1929, § 15581 *et seq.*).

18. CONTRACTS—CHANGE OF PUBLIC POLICY BY STATUTE.

   A contract which is drawn up at a time when performance thereof would or might be unauthorized by law and contrary to public policy but the performance of which was intended to be, and was, deferred until after the contemplated change by law in such policy is valid.

19. ATTORNEY AND CLIENT—STATUTES—KNOWLEDGE IMPUTED TO CLIENT.

   An attorney's knowledge of a statute then enacted but not yet effective during early stages of period when settlement agreement was being negotiated and executed by various parties involved in the settlement of a will contest will be imputed to the attorney's client, one of the interested parties (3 Comp. Laws 1929, § 15581 *et seq.*).

20. WILLS—ORDER OF ADMISSION TO PROBATE—WILLS—RES JUDICATA—COLLATERAL ATTACK.

   An order of probate court admitting a will to probate is *res judicata* and not subject to collateral attack in suit to set aside settlement agreement which had been entered into prior to entry of such order relative to the will in good faith contest of the instrument.

21. SAME — CONTEST — SETTLEMENT — MINORS — STATUTES —
INTEREST IN SUBJECT MATTER.

Settlement agreement, entered into between parties to contest
of will which had set up various trusts with contingent
remainders for some of testator's children, was not void
because no one had appeared for testator's minor child who
was born after will had been executed and was not mentioned
therein and for whom her statutory share was set aside as
though testator had died intestate and which child had died
while still a minor, where she had no direct interest in the
controversy, the agreement recited she was not a party be-
cause she had no interest in the subject matter thereof, and,
because of her death while a minor before the enactment
of statute preserving contingent remainders for heirs of
contingent remaindermen, no possibility exists that she would
be entitled to the contingent future interests, which were
dependent on her survival of testator's other children, agree-
ment was approved by probate court and no appeal taken
therefrom by plaintiff, he has received what the settlement
agreement provided for and no other parties, then minors,
have disavowed it (3 Comp. Laws 1929, §§ 15549, 15581
*et seq.*; Act No. 211, Pub. Acts 1931).

22. SAME—CONTINGENT REMAINDERS—LIFE ESTATES.

Prior to passage of statutes preserving contingent remainders
to heirs or assigns of contingent remaindermen, a remainder
given contingent upon devisee's survival of life tenant dying
without issue does not vest where remainderman predeceases
life tenant, unless testator expresses a different lawful in-
tention, and while the rule was changed by that act, it is not
retroactive (Act No. 211, Pub. Acts 1931).

23. SAME—JURISDICTION OF PROBATE COURT—LACK OF JOURNAL
ENTRY OF CONTINUANCE.

Plaintiff in suit to set aside settlement agreement in will con-
test, brought some 17 years after it had been entered into
while probate proceedings were being conducted, may not
complain of probate court order admitting will to probate
because of loss of jurisdiction due to alleged hiatus in the
proceedings claimed to have resulted from failure to make
journal entry of a continuance where such an entry appears
on the face of the petition for probate, the docket of the
court, and in the short book nor of later order made setting

aside the order duly entered on adjourned date because of alleged inadvertence or mistake where order setting aside the previous order recited that all parties concerned were represented in open court and no claim is made as to lack of presence or representation at such later date.

24. SAME—CONTEST—WITNESSES.

Where due execution of a will is contested, two witnesses, if available, should be sworn.

25. SAME—WITNESSES.

Claim that ' will was not properly probated because only one witness was sworn at the hearing, made in suit to set aside settlement agreement entered into in contest which followed proposal of will for probate, some 17 years previously, *held*, without merit, where plaintiff herein who was contestant therein did not allege lack of proof at the hearing as a ground for holding will not allowable for probate in his appeal to circuit court from order allowing will to probate.

26. JUDGMENT—RES JUDICATA—WILL CONTEST—APPROVAL OF SET-TLEMENT AGREEMENT.

Decree of chancery court which approved agreement made in settlement of will contest and a supplemental agreement re-establishing trust provisions of will which had also been questioned by contestant, plaintiff in suit to set aside such agreements, brought about 17 years later, was *res judicata* as to validity of such agreements where approval of them had been had after final execution by representatives of certain minors, parties in interest, after effective date of constitutional statute relative to settlement of will contests in which the interests of minors were involved, statute was properly invoked, proceedings regular, contests of will and trust provisions thereof were in good faith, and plaintiff received a substantial sum as a result of such settlement agreement (3 Comp. Laws 1929, § 15581 *et seq.*).

27. SAME—INTRINSIC FRAUD—REHEARING—APPEAL.

In case there was intrinsic fraud in securing the entry of a decree in a chancery case, the remedy would be by motion for rehearing and by appeal.

28. SAME—EXTRINSIC FRAUD—REMEDY.

In case there was extrinsic fraud in securing the entry of a decree in a chancery case, a plaintiff must act promptly and make a proper showing in order to secure relief.

29. Same—Res Judicata—Jurisdiction.
    Jurisdiction having attached, the decree entered in a chancery suit is *res judicata* of matters actually presented or available therein, in the absence of fraud having been charged or proven.

30. Same—Res Judicata—Jurisdiction.
    The principles of *res judicata* apply to questions of jurisdiction of the subject matter or parties as well as to other matters.

31. Same—Res Judicata—Constitutionality of Statutes.
    Conclusions of law and fact actually reached by a court in a former proceeding before it, especially those incorporated in preamble of decree, are *res judicata* as well as those which could have been, but were not, raised to sustain or defeat the claim there advanced, such as the constitutionality of a statute and adequacy of such statute to cover a grant of jurisdiction to a court (3 Comp. Laws 1929, § 15581 *et seq.*).

32. Wills—Settlement Agreement—Former Adjudication—Collateral Attack—Bills of Review—Rehearing.
    In suit to set aside settlement agreement in will contest and supplemental agreement reestablishing testamentary trusts, the validity of which had also been contested, where bill sought as its principal object the rendering intestate *ab initio* of the trust property, it did not constitute a direct attack upon former decree which had approved such agreements, and since bills of review have been abolished and replaced by motions for rehearing subject to strict time limitations long since expired under pertinent court rule, the bill did not justify an inquiry into the merits of the former decree, notwithstanding the agreement, signed by plaintiff, may not have been signed by every single party required by invoked statute relative to such settlement agreements (3 Comp. Laws 1929, § 15581 *et seq.*; Court Rule No. 48, §§ 1, 4 [1933]).

33. Same—Settlement of Contest—Fraud—Construction of Agreement—Parol Evidence.
    Settlement agreement in will contest, made by parties and approved by court pursuant to statute relative to such agreements where interests of minors are involved whereby plaintiff relinquished "any and all right, present or future," which

plaintiff had in estate involved, in the absence of claim or proof of fraud, would exclude parol evidence that any particular claim was not intended to be included (3 Comp. Laws 1929, § 15581 *et seq.*).

34. Compromise and Settlement—Mistake of Law—Subsequent Judicial Decision.

Where a doubt as to what the law is has been settled by a compromise, a subsequent judicial decision by the highest court of the jurisdiction upholding the view adhered to by one of the parties does not afford a basis for a suit by him to upset the compromise as the reality of the claim given up must be measured, not by the state of the law as it is ultimately discovered to be, but by the state of the knowledge of the person who at the time has to judge and make the concession.

35. Same—Equity—Mistake of Law.

Equity will support a compromise though based upon a mistake of law.

36. Constitutional Law—Due Process.

Due process is the embodiment of the English sporting idea of fair play and there is a denial thereof when there is a failure to observe the fundamental fairness essential to the very concept of justice.

37. Same — Due Process — Courts — Will Contest — Settlement Agreement.

Plaintiff who participated in will contest and cooperated in execution of settlement agreement subsequently approved by court, apparently then resulting satisfactorily to him, *held*, not to have been denied due process where court had properly obtained and retained jurisdiction of the proceedings (3 Comp. Laws 1929, § 15581 *et seq.*).

Appeal from Wayne; Richter (Theodore J.), J. Submitted October 21, 1941. (Docket No. 61, Calendar No. 41,760.) Decided February 11, 1942.

Bill by John Duval Dodge against Detroit Trust Company, a Michigan corporation, and others to declare null and void a will, set aside a "settlement agreement," and for other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*Robert S. Marx, Carl Runge, Lawrence I. Levi* and *Roy G. Holmes* (*Alex J. Groesbeck*, of counsel), for plaintiff.

*Miller, Canfield, Paddock & Stone* and *Louis H. Fead,* attorneys for defendants Detroit Trust Company and Matilda R. Wilson, individually and as trustees under the will of John F. Dodge, deceased, and Matilda R. Wilson as administratrix of estate of John F. Dodge, deceased.

*Beaumont, Smith & Harris, Hal H. Smith, Charles Wright, Jr.,* and *Frank E. Robson (Jackson A. Dykman,* of counsel), for defendants Winifred Dodge Seyburn and Isabel Dodge Sloane.

*Dykema, Jones & Wheat,* for defendant Frances Dodge Johnson.

*Butzel, Eaman, Long, Gust & Bills* and *Paul Oren (Thomas G. Long,* of counsel), for defendant Annie Laurine Dodge.

*Monaghan, Crowley, Clark & Kellogg,* for defendant Matilda R. Wilson as executrix of the estate of Daniel George Dodge, deceased.

*Bishop & Bishop (Wayne E. Babler,* of counsel), for defendants Alfred G. Wilson, individually and as guardian *ad litem* of Barbara Jean Wilson and Richard Samuel Wilson, minors, and Matilda R. Dodge Wilson and Heath J. Ballagh, as trustees under trusts created by Daniel George Dodge, deceased.

BUTZEL, J.   On January 14, 1920, John F. Dodge died leaving an instrument, dated April 4, 1918, purporting to be his will.   He was survived by his widow, Matilda R. Dodge, and six children, their names and ages at the time of his death being as follows: Winifred Dodge Gray (now Seyburn),

Isabel Dodge Sloane, each over 21 years, John Duval Dodge, about 21 years and 5 months, children by his first wife; Frances Matilda Dodge (now Johnson), about 5 years, Daniel George Dodge, about 2½ years, and Anna Margaret Dodge, about 8 months, the latter three being children by Matilda Dodge. Anna Margaret Dodge was born June 14, 1919, after the execution of her father's will, and, as she was not provided for therein, she became entitled to her statutory* share of his estate, the same as if he had died intestate. As far as we can determine from the record, the amount set off for her share was in the neighborhood of $2,700,000. Anna Margaret died April 13, 1924, when less than 5 years of age. Her personal property went to her mother Matilda Dodge, while her real estate, as ancestral property, was divided between her mother and the brothers and sisters. *In re Dodge's Estate,* 242 Mich. 156. John Duval Dodge received his full share of Anna Margaret's interest in their father's real estate.

The inventory of the John F. Dodge estate showed that on January 20, 1920, the personal property was of the value of $36,852,588.41. The sole parcel of real estate belonging to the estate was appraised at $40,000. After payment of debts, Federal estate and income and State inheritance taxes, et cetera, the net value of the estate according to the report on file was reduced to the sum of $23,634,286.69. It might be added that later the undistributed part of the estate was tremendously enhanced through dividends from Dodge Brothers, a Michigan corporation, in which deceased held one-half of the stock, and thereafter from the sale of the entire capital stock of Dodge Brothers, a Michigan corporation, at a price very much in excess of the inventoried value.

* See 3 Comp. Laws 1929, § 15549 (Stat. Ann. § 27.2649).— REPORTER.

The real estate consisted of only a single parcel of property at the foot of Atwater street in the city of Detroit, and is referred to as the boathouse property. Decedent had other large real estate holdings that he disposed of prior to his death, a large amount of it having been transferred to the Dodge Land Company in which decedent owned stock.

The will of John F. Dodge was offered for probate on February 10, 1920, by his brother Horace E. Dodge, who asked that administration be granted to Matilda R. Dodge and himself, the executors named in the will. The will, after devising certain real estate, subsequently disposed of after the execution of the will but prior to testator's death, and after making a number of specific bequests, devises and bequeathes to his wife Matilda Dodge and his brother Horace E. Dodge and the Detroit Trust Company, as trustees, all the other property, both real and personal, with full power and authority to sell and convey and for purposes thereinafter set forth. It provided for the payment of taxes and insurance, repairs and maintenance charges of the estate, the payment of $10,000 a year for 10 years to his widow, so that she might properly maintain the farm devised to her; the building of a home in Grosse Pointe, Michigan, and its maintenance; a proper sum to look after the children, annuities amounting to $14,000 a year to relatives during their lifetime; the payment to his son John Duval Dodge (plaintiff herein) of $150 a month during his lifetime; the payment of $50,000 a year for five years to provide his daughter Isabel Cleves Dodge with a home if testator had not provided one during his lifetime. We set forth further provisions of the will that are pertinent to the instant case:

"14. Subject to the carrying out of the foregoing provisions of this my last will, I direct my said

trustees to expend the net income of my said estate, as follows:

"(a) To pay to my wife, Matilda R. Dodge, one fifth of same in quarterly payments, during the life of my said wife;

"(b) To pay to my daughter, Winifred Dodge Gray, one fifth of same in quarterly payments, during the life of my said daughter;

"(c) To pay to my daughter, Isabel Cleves Dodge, one fifth of same in quarterly payments, during the life of my said daughter;

"(d) To set aside each year until my daughter, Frances Matilda Dodge shall become 25 years of age, one fifth of said net income for the benefit of my said daughter, and out of same to pay to my said daughter in quarterly payments, such sums as may be necessary, in the judgment of my said trustees, to provide my said daughter with proper maintenance for herself and her home, if she shall be established in a home of her own, clothing, education and recreation; and I direct my said trustees to invest and reinvest and keep invested so much of said income herein provided for my said daughter, as shall not be used for her benefit under this clause up to the time she shall become 25 years of age.

"When my said daughter shall become 25 years of age, I direct my said trustees to pay to her all such sums as may have been accumulated for her by my said trustees hereunder, and thereafter to pay to my said daughter said one fifth of said income in quarterly payments during the life of my said daughter.

"(e) To set aside each year until my son, Daniel George Dodge, shall become 25 years of age, one fifth of said net income for the benefit of my said son, and out of same to pay to my said son in quarterly payments, such sums as may be necessary in the judgment of my said trustees, to provide my said son with proper maintenance for himself and his

home, if he shall be established in a home of his own, clothing, education and recreation; and I direct my said trustees to invest and reinvest and keep invested so much of said income herein provided for my said son, as shall not be used for his benefit under this clause up to the time he shall become 25 years of age.

"When my said son shall become 25 years of age, I direct my said trustees to pay to him all such sums as may have been accumulated for him by my said trustees hereunder, and thereafter to pay to my said son said one fifth of said income in quarterly payments during the life of my said son.

"(f) Upon the death of my said wife, Matilda R. Dodge, I direct my said trustees to dispose of the one fifth part of said income herein provided to be paid to my said wife, for my said daughters, Winifred Dodge Gray, Isabel Cleves Dodge and Frances Matilda Dodge and my said son, Daniel George Dodge, share and share alike in the same manner that my trustees are hereinbefore directed to dispose of the portions of said income provided for my said children respectively.

"(g) In the event that any of my children, Winifred Dodge Gray, Isabel Cleves Dodge, Frances Matilda Dodge and Daniel George Dodge, shall die without leaving lawful issue him or her surviving, then in that event, I direct my said trustees to dispose of the share of said income provided for such deceased child or children, among the survivors of said Winifred Dodge Gray, Isabel Cleves Dodge, Frances Matilda Dodge and Daniel George Dodge, in the same manner respectively that my said trustees are directed to dispose of the portions of said income provided for said Winifred Dodge Gray, Isabel Cleves Dodge, Frances Matilda Dodge and Daniel George Dodge;

"(h) In the event that any of my said children, Winifred Dodge Gray, Isabel Cleves Dodge, Frances Matilda Dodge and Daniel George Dodge,

shall die, leaving lawful issue him or her surviving, then I direct my said trustees to pay the portion of such income provided for such deceased child or children to such issue of such deceased child or children or the lawful representatives of such issue in quarterly payments as long as any of my said children, Winifred Dodge Gray, Isabel Cleves Dodge, Frances Matilda Dodge and Daniel George Dodge, shall survive, and upon the death of all of my said children, Winifred Dodge Gray, Isabel Cleves Dodge, Frances Matilda Dodge and Daniel George Dodge, then I direct my said trustees to convey my said estate to the heirs of my said children, Winifred Dodge Gray, Isabel Cleves Dodge, Frances Matilda Dodge and Daniel George Dodge, in such proportion as by law such heirs shall be entitled to receive same.

"The provisions I have made in this will for my son, John Duval Dodge, have been made after careful thought and deliberation on my part, uninfluenced by any person or persons whomsoever, and I believe these provisions to be the most wise I can make for my said son, John Duval Dodge. I make this explanation in order that it may be known that I have given careful thought to the claims of my said son, John Duval Dodge, and in order that neither my wife, nor any of my children may be accused of having influenced me in reference to the provisions that I have herein made in regard to my said son."

Shortly after the will was filed for probate, John Duval Dodge, plaintiff herein, made it known that he was dissatisfied with its provisions, and that he would contest it. He retained able attorneys, the late Stewart Hanley, a former judge of probate, and at one time president of the Detroit Bar Association, the late Walter E. Oxtoby, and Frank E. Cook, all of Detroit, men of the highest position at the bar and characterized as "eminent counsel" by

plaintiff's attorney on the oral argument of the instant appeal.

Horace E. Dodge died within the year following the death of his brother John. In the petition for probate, signed by Horace E. Dodge, the value of the real estate is given as "dollars, none," and the personal estate as "$100,000 and upwards." The boathouse property, the single parcel left in the estate and of a value almost insignificant when compared with the aggregate value of the assets of the estate, was not mentioned in the petition. Its existence, however, became very important in subsequent litigation. We are impressed with the fact that the written documents and records, including the court proceedings, show that because of the existence of this parcel of real estate the validity of the will was carefully considered at the time of the probate of the will, as well as in the former chancery case, by the attorneys for both plaintiff and the other beneficiaries, and also by the court. The hearing on the petition for probate of the will was continued from time to time, there being over 30 adjournments. Obviously there were negotiations pending to settle the contest.

On March 29, 1921, a bill was introduced in the legislature (Act No. 249, Pub. Acts 1921, 3 Comp. Laws 1929, § 15581 et seq. [Stat. Ann. § 27.2691 et seq.]), which passed both houses and was signed by the governor May 18, 1921. It went into effect August 18, 1921, 90 days after the legislature adjourned. The act provided for the settlement of will controversies. We shall discuss it later. On June 29, 1921, all parties were in the probate court and, apparently without any objection on the part of any one, a previous order adjourning the hearing of the petition for probate of the will to July 12, 1921, was vacated and the hearing set for and held

at 2 p.m. on June 29, 1921. The will was admitted to probate on that date. On the same day, plaintiff filed written objections, sworn to by him. The only one that concerns us now is the one which specifically states:

"Because said instrument does not provide for lawful disposition of said property of deceased."

Plaintiff appealed to the circuit court from the probate court order allowing the will.

Act No. 249, Pub. Acts 1921, provided for a compromise, settlement and adjustment of any will contest or of any controversy concerning the interpretation, effect or validity of a will arising in the administration of the estate under the will or under any trust created by the will, when there is or may be any person interested who is a minor or otherwise without legal capacity to act in person or whose present existence or whereabouts cannot be ascertained, or when there is an inalienable estate or interest or future contingent estate which will' or may be affected by such compromise, settlement or adjustment, provided that the agreement for settlement shall be submitted to the probate court having jurisdiction of the probate of the will or to the circuit court in chancery of the proper county for the approving thereof, authorizing of the settlement, et cetera. A formal settlement agreement dated June 27, 1921, during the 90-day interim between the adjournment of the legislature (May 19, 1921) and the effective date of the act (August 18, 1921), was executed by plaintiff and the other adults but evidently was not signed by the general guardians and guardians *ad litem* of the minors or by the guardian *ad litem* duly appointed to represent future contingent estates and interests until later. The guardian *ad litem* to represent future contingent

estates and interests under the will was not appointed until November 15, 1921, and the settlement agreement was not signed by him until after a decree was entered in the circuit court for the county of Wayne in chancery on the 29th day of November, 1921, approving of the settlement agreement. The chancery suit was begun on October 17, 1921. In paragraph 8 of the bill of complaint filed at that time, the claim of invalidity of the trust now being asserted is fully set forth as one of the controversies being settled. This was admitted in the corresponding paragraph of the answer of John Duval Dodge. All the parties interested in the will entered their appearances. The signature of plaintiff herein, a defendant in that suit, appears at the end of his answer, which was countersigned by his counsel. In the concluding paragraph he stated that without waiving any rights previously asserted, he joined in asking that the relief prayed for in the bill of complaint be granted. This included the settlement of both the trust controversy and the will contest, the proposed settlement agreements being attached to the bill of complaint. The settlement agreement, which plaintiff signed, provided for the payment of the lump sum of $1,600,000 and interest at the rate of 5 per cent. per annum from December 9, 1920, to John Duval Dodge, plaintiff herein, in lieu of the income of $150 per month provided by the will, such provision being abrogated by the settlement agreement. It also provided for the payment of a sum of $1,000,000 each to the widow and each one of the other four children of John F. Dodge but safeguarded the payment of all debts, taxes, et cetera, and all of the other legacies in the will, and provided that the agreement be submitted to a court of competent jurisdiction for approval in order to render it binding, and commanded the trustees to convert

all the real estate into stocks, bonds or other income-producing property, such mandate to have the same force and effect as if it had been imposed upon the trustees by the terms of the will. It further provided for the renunciation of all plaintiff's rights of, in or to the estate and the amounts being distributed. Anna Margaret Dodge was not a party to the agreement, the reason for omitting her as stated therein, being that she had no interest one way or the other in the subject matter thereof. John Duval Dodge, the plaintiff, was a party to the agreement and as such represented any right he might have to any future contingent estate or interest in the property. There had been set off to Anna Margaret Dodge the full share that she would be entitled to had her father died intestate. On March 20, 1922, several months after the decree was entered in the chancery suit, a judgment was entered *nunc pro tunc* as of January, 1922, in the circuit court for the county of Wayne admitting the will to probate in the law case appealed from the probate court and remitting the cause to the probate court for further proceedings. At the time the settlement agreement was entered into with plaintiff, a supplemental agreement was entered into by the heirs mentioned in the will re-establishing the trust provided for in the will, and also providing for the immediate sale of the real estate consisting of the boathouse property. Both agreements were approved by the decree in the chancery proceedings. On March 28, 1922, plaintiff was paid the $1,600,000 plus $104,222.23 in interest. The real estate was sold for $55,000, and any controversy because of it disposed of together with its cause. The parties then believed that they were finally rid of both, but plaintiff, after almost 18 years, in the present proceed-

ings seeks to set aside the settlement as far as it concerns him.

Matilda Wilson elected to take under the statute * instead of under the will. Statements were filed by the trustees each year, and the litigation appeared to have ended. The records of this court do show that in 1927, or thereabouts, plaintiff and others filed a petition in the circuit court for the county of Wayne, claiming that they were entitled to share in the personal as well as the real property of the estate of Anna Margaret Dodge, a deceased minor. The case reached this court and we made disposition as hereinbefore stated. *In re Dodge's Estate, supra.* Plaintiff, at that time, was represented by other counsel. He did not make any claims that he asserts in the instant suit, nor would they have been pertinent. It would, however, be reasonable to suppose that if the rights he now asserts had then appeared to have any merit, his counsel would have discovered them and prompted him to take action.

Years passed by until May 20, 1939, when plaintiff filed his present bill of complaint. He makes many charges. He repudiates the settlement, asserts that the approval proceedings were improper, that the circuit court in the 1921 suit had no jurisdiction in the premises, that Act No. 249, Pub. Acts 1921, was unconstitutional, that the agreement became inoperative, the parties being released through its provisions not being carried out, et cetera. His main charge is that the trust provisions of the instrument were null and void *ab initio,* because real estate was included with personal property in the trust provisions and, therefore, they violated the statutes hereinafter set forth, that neither by agree-

---

* See 3 Comp. Laws 1929, §§ 15564, 15565 (Stat. Ann. §§ 27.2664, 27.2665).—REPORTER.

ment nor by court decree could something be made out of an illegality or something forbidden by statute, that whatever moneys plaintiff received in the attempted settlement were only part of his intestate share of the trust property, and, therefore, were part of his own and not that of others.

The settlement agreement, the supplemental agreement, full exemplifications of records of all the court proceedings, both in the chancery and probate courts, are incorporated by reference in and attached to the bill of complaint in the instant case. Defendants in their answers claim that the proceedings in the chancery and probate courts are *res judicata,* that all proceedings were regular and legal, that even without the chancery proceeding the trust provisions of the will were legal, and that, if there is any taint of fraud or illegality in the action of the parties, plaintiff was an active participant and, therefore, did not come into court with clean hands, that his claim was barred by the statute of limitations, et cetera. We have only given the barest outline of the claims of the respective parties, although we have considered all of them and can just touch upon the many questions raised in over 700 pages of briefs and 600 pages of record.

Defendants moved to dismiss the bill of complaint as amended. They claimed that the allegations in the bill, well pleaded by plaintiff, together with the exhibits attached to the bill of complaint, conclusively prove that plaintiff is not entitled to any relief. There is no question but that on the motion to dismiss, well pleaded allegations not controverted by the exhibits attached to the bill must be considered as true. At the outset any innuendo indicating fraud by defendants or their attorneys is entirely dispelled by the frank admission of plaintiff's counsel that no fraud is charged. We also disregard the

claim that Act No. 249, Pub. Acts 1921, was improperly enacted for the purpose of the former litigation in order to make something legal that would otherwise have been illegal. No impropriety is shown; validating legislation is common. The act speaks for itself.

We do not overlook the fact that plaintiff and his former counsel participated in the former litigation approving of the settlement agreement and brought in accordance with the provisions of Act No. 249, Pub. Acts 1921, which they now assail. In reference to the charge that the rehabilitation of the trust by the supplemental agreement, which was entered into contemporaneously with the settlement with plaintiff, was for the purpose of avoiding taxes, we find no well pleaded facts on which such charge can be sustained. No fault can be found in an effort to maintain a trust established by a testator in a legal manner even if its tendency is to keep taxes down when there is no fraud. As was said in *Goodrich* v. *City National Bank & Trust Company of Battle Creek,* 270 Mich. 222, 232, "The government has ample authority to conserve its power of taxation." We shall not consider other charges in plaintiff's bill which are wholly unsupported by facts. They are merely conclusions on his part. That is not enough. On the other hand, plaintiff's charges that are well pleaded in the bill of complaint are answered fully and completely by the exhibits annexed to the bill of complaint. Under 3 Comp. Laws 1929, § 14120 (Stat. Ann. § 27.814), and Court Rules No. 17, § 7 (1933), No. 18, § 1 (e) (1933), and No. 23, § 8 (1933, as amended in 1938), a motion to dismiss was proper. Even before the adoption of these rules, however, although in *Siegmeyer* v. *Small,* 254 Mich. 679, 680, we held that "Former adjudication must be pleaded in bar, and cannot be considered under * * * motion

to dismiss. * * * Such an issue required a plea in bar and proof in support thereof," we also pointed out the reason for the rule there applied by saying: "The bill of complaint does not present the question of former adjudication. Extrinsic proof was necessary."

This reason does not exist in the case at bar, for here the bill of complaint sets forth the former adjudication verbatim and incorporates it. Such a bill would be subject to demurrer at common law on the ground of *res judicata*. The rule that facts well pleaded must be taken as true on demurrer does not extend to conclusions of fact or law (*Schwab* v. *Mabley*, 47 Mich. 572; *Churchill Township* v. *Cummings Township*, 51 Mich. 446), or to contradictory statements (*Heth* v. *Smith*, 175 Mich. 328). Where allegations contradict official records, the records and not the allegations are to be taken as true, and such allegations of fact in a bill of complaint, contradicting the records which are attached to such a bill, are not well pleaded and are inadmissible. That the record of a court, judicially determined to be entirely regular, must be accepted as the highest and final evidence of the facts involved, was decided in *Steele* v. *Bliss*, 170 Mich. 175, 184, and the validity of that principle is not affected by the fact that on rehearing we changed our opinion therein on another ground. Mere statements that defendant's acts were "unlawful" may be regarded as surplusage. *Williams* v. *Raper*, 67 Mich. 427, 429. Plaintiff relies on the case of *Brachman* v. *Hyman*, 298 Mich. 344, which is not at all pertinent. In that case, we held that a mandamus judgment cannot be *res judicata* if, as alleged in the bill of complaint, its procurement was wholly unknown to plaintiff at the time, and part of a fraudulent scheme, when the truth of such allegations well pleaded can only be

determined after taking testimony whereupon it can be ascertained whether there was any merit to plaintiff's contention. In the instant case, no such fraudulent conspiracy is alleged, nor any lack of knowledge on plaintiff's part of the prior proceedings in which he actually participated. We repeat that plaintiff expressly disavows fraud. The trial court dismissed the amended bill in the instant case on the ground that the facts well pleaded show that the issues raised are *res judicata* and that the settlement was legal and proper. Plaintiff appeals from the decree dismissing the bill.

Plaintiff now claims that the entire settlement was illegal, that it was simply a method to circumvent the laws of the State of Michigan, that nothing whatsoever could be done to legitimatize something evil and prohibited by law, that the existence of the boathouse property vitiated the entire will and set up a trust in violation of 3 Comp. Laws 1929, § 12934 (Stat. Ann. § 26.14):

"Every future estate shall be void in its creation, which shall suspend the absolute power of alienation for a longer period than is prescribed in this chapter; such power of alienation is suspended when there are no persons in being, by whom an absolute fee in possession can be conveyed,"

and 3 Comp. Laws 1929, § 12935 (Stat. Ann. § 26.15):

"The absolute power of alienation shall not be suspended by any limitation or condition whatever, for a longer period than during the continuance of two lives in being at the creation of the estate, except in the single case mentioned in the next section."

Plaintiff further claims that such trust being absolutely void in its creation, a nullity, beyond any curative measures, nothing possibly could be done

to animate something nonexistent; that therefore the trust provisions of the will failed and the property should have been distributed as if there were no will, and, therefore, plaintiff, instead of receiving any consideration for signing the agreement, only received a payment on account from a larger sum which he claims is indisputably due him.

Defendants, however, maintain and insist that the entire trust is good, the settlement was made after a good-faith controversy, and that neither they nor plaintiff's counsel at the time had the prescience or omniscience to be able to foretell that in 1938, in the case of *In re Richard's Estate,* 283 Mich. 485, this court would hold that the presence of an almost inconsiderable proportion of real estate included in the trust property would vitiate the entire trust if its provisions were contrary to the statutes against restraint of alienation of real property, though not contrary to the common-law rule against perpetuities applicable to personal property in Michigan. The attorneys were aware of the disposition of this court to carry out the wishes of the testator according to the provisions of a will to the extent that they legally could be carried out. Such tendency has seen more recent expression in our decisions in *Gettins* v. *Grand Rapids Trust Co.,* 249 Mich. 238; *Loomis* v. *Laramie,* 286 Mich. 707; *De-Buck* v. *Bousson,* 295 Mich. 164. Could not the wishes of the testator be safely carried out without doing violence to the law, the trust being held good as to the almost 99.9 per cent. of the property consisting of personalty, the scintilla of real estate being declared intestate property? We pass the question as not necessary to decision.

Attorneys for defendants also claim the trust provisions of the will are absolutely valid, notwithstanding that the trust estate contains real estate.

They point to the following provision of the will:

"20.    If same can be done legally, then I direct my said trustees to cause a corporation to be organized under the laws of the State of Michigan to be known as the John F. Dodge Estate, and, excepting the real and personal property specifically devised and bequeathed by the terms of this will, I hereby authorize and direct my said trustees to transfer and convey to such corporation by proper assignments, transfers, bills of sale, and deeds of conveyance, either with or without covenants of warranty as to my said trustees shall seem best, all property, real or personal of which I shall die seized or possessed, or which I shall own or be in any way interested at the time of my death, or which shall in any way accrue to my estate after my death.

"I direct my said trustees to take and hold, in their own names as trustees under this will, so much of the capital stock of said John F. Dodge Estate corporation as by law they may be entitled to hold, and to select such other person or persons to hold the remainder thereof as in their judgment shall seem best; my said trustees to at all times retain complete control of the management and affairs of said corporation and to direct its operation and affairs of said corporation and to direct its operation and affairs as part of their duties as trustees hereunder.

"If, for any reason, it may not be legal to carry out this clause of my will, then, in that event, my said trustees shall carry out the provisions of this will as if this clause were not inserted herein."

They claim that this was an absolute direction or mandate by the testator to convert at once all of his property into personal property by forming a new corporation, transferring the assets to it and taking shares of stock in lieu of the real and personal assets turned over to such corporation.    This would have the same effect as a mandate to sell real estate upon

the death of the testator, namely, an equitable conversion of the real estate into personal property as of testator's death even though the trustees have for the time being failed to carry out the instructions, under the rule announced in *Michigan Trust Co.* v. *Baker,* 226 Mich. 72, 76, 77. Defendants state without contradiction that under the corporation law existing at the time of the death of testator a trust corporation could have been legally formed to carry out the terms of the trust.

Again defendants assert that provisions of the trust section of the will, which we find unnecessary to quote, providing for annuities to certain relatives, in no way restrain alienation. Such annuities are payable out of the income from the estate whether it be real or personal property, and there could be no final distribution except after provisions were made to safeguard the payments of such annuities. This duty was recognized in the settlement in 1921. Defendants claim that the lives of the four children must be regarded as a class and as to them the estate is only tied up for one life, namely, that of the ultimate survivor of that class. They assert that this is the law of Michigan, and rely on *Kemp* v. *Sutton,* 233 Mich. 249, later approved in *Felt* v. *Methodist Educational Advance,* 247 Mich. 168. In *Kemp* v. *Sutton, supra,* 260, the court quoted from *Smith's Appeal,* 88 Pa. 492:

"It matters not how many lives there may be so that the candles are all burning at the same time, for the life of the longest liver is but a single life."

The court also said in *Felt* v. *Methodist Educational Advance, supra,* 171:

"The decisions of this court upon the question are not harmonious. It would be fruitless to discuss

them or the opinions of other courts. Our later cases hold that the devise of a life estate to a class collectively creates an estate for one life only, that of the 'longest liver' of the class, and is to be so taken in determining the period of suspension of power of alienation.''

While we are much impressed by the arguments of attorneys for defendants in regard to the legality of the trust, it is unnecessary to pass upon them except to show the uncertainties with which counsel of both plaintiff and defendants in the former litigation were confronted. The notice of contest in the will case, the decree of the court entered November 29, 1921, in the former chancery case holding that plaintiff's contest at that time was in good faith, the settlement agreement, all exhibits in the amended bill of complaint in the instant case, convince us beyond peradventure that the contest was made and the settlement entered into in good faith, that the latter became binding, and that the decree in the former chancery case and the order of the probate court admitting the will to probate became *res judicata* and plaintiff was and is bound thereby.

Plaintiff claims that the chancery court never had jurisdiction and that the probate court lost whatever jurisdiction it may have had by advancing the hearing to a day prior to that to which it previously had been adjourned, though all parties were present when the advancement was ordered, and at the hearing. Plaintiff claims that Act No. 249, Pub. Acts 1921, was unconstitutional in that its title, being prospective, prevented it from applying to contests, controversies or settlements arising or concluded before the effective date of the act, and confined its operation to cases where one or all of these elements occurred after such date. The will contest was still pending in the probate court on August 18, 1921;

the chancery suit had not yet been commenced. The settlement agreement, though signed by the adults, had not yet been executed on behalf of the other necessary parties on that date, and hence at that time did not bind anyone finally. In a very real sense, therefore, both the will contest and the trust controversy were pending when Act No. 249 went into effect, and, as it was procedural in nature, it was properly invoked. The title speaks for itself, and defies the restricted construction put upon it by plaintiff:

"An act to provide for the compromise, settlement or adjustment of any contest of the probate of any instrument propounded for probate as the last will of a deceased person or of any controversy arising concerning the interpretation, effect or validity of any such instrument, or arising in the administration of an estate under a will or under a trust created by a will, when there is or may be any person interested who is a minor or otherwise without legal capacity to act in person or whose present existence or whereabouts cannot be ascertained, or when there is any inalienable estate or interest or future contingent estate or interest which will or may be affected by any such compromise, settlement or adjustment."

The settlement agreement was dated June 27, 1921. The act did not become effective until August 18, 1921. There is no question, in view of the agreement and what transpired, that the settlement agreement was made in contemplation of securing the consent of the minors, unborn heirs, future contingent interests, et cetera. In paragraph 5 of the agreement, six months was set as the maximum time for obtaining such consent. The agreement was made immediately (though contingently) binding on the adult signatories. Such binding effect would be lost if six months passed without obtaining the necessary con-

sents on behalf of the minors, the unborn and the contingently interested. Though stated in the form of a condition subsequent, this condition was in effect a condition precedent, for the contract was not to bind all of the parties until it should be fulfilled. They contemplated that its performance would not be completed until after the effective date of the act. The question before us is whether an agreement drawn up at a time when performance would, according to the claims of plaintiff, be unauthorized by law and contrary to public policy but the performance of which was intended by the parties to be deferred until the contemplated change by law in such policy, is valid or void. The well pleaded facts show that the settlement agreement was to go into effect after the effective date of the act and that it was so carried out. Such a contract is valid. *Columbus, P. & I. R. Co.* v. *Railroad Co.*, 5 McLean, 450 (6 Fed. Cases, No. 3,047); *Taylor* v. *Railway Co.*, L. R. 4 H. L. 628 (23 L. T. 657, 39 L. J. Ex. 217); *Farber* v. *John Aquino Sons, Inc.*, 253 App. Div. 600 (3 N. Y. Supp. [2d] 236); *Godfrey* v. *McArthur*, 186 Okla. 144 (96 Pac. [2d] 322); annotation, "Validity and enforceability of contract which was contrary to statute or public policy when made, as affected by subsequent change of law," "IV. Validity of contract made with reference to contemplated statutory change," 126 A. L. R. 701-703.

There is a reference in paragraph 5 of the agreement to the obtaining of judicial approval of the entire agreement. It is obvious that plaintiff's counsel at the time knew of Act No. 249, *supra,* and such knowledge will be imputed to plaintiff. In addition to this fact, Act No. 249, *supra,* probably was resorted to through an abundance of caution. Under the circumstances, we need not discuss the application of the rule set forth in *Brown* v. *Kalamazoo*

*Circuit Judge,* 75 Mich. 274 (5 L. R. A. 226, 13 Am. St. Rep. 438). In passing, we call attention to *Metzner* v. *Newman,* 224 Mich. 324 (33 A. L. R. 98), where we held that the chancery court had jurisdiction, independent of that statute, to adjudicate the rights and equities of infants by approving, as in the best interests of such minors, a settlement agreement compromising litigation involving a will contest. Insofar as the present bill attacks the 1922 probate order admitting the John F. Dodge will to probate, such attack is clearly collateral, and, therefore, unsustainable, under *Chapin* v. *Chapin,* 229 Mich. 515, which holds that orders of the probate court are *res judicata,* not subject to collateral attack.

Plaintiff further claims that the settlement agreement was null and void because it was not subscribed to by all of the parties, no one having appeared for Anna Margaret, a minor child, who was not provided for in the will, and was born subsequently to making the will, and died April 13, 1924, while still an infant. A complete share was set off to her the same as if there had been no will. She had no direct interest whatsoever in the controversy. The settlement agreement of June 27, 1921, signed by plaintiff, recites that Anna Margaret Dodge was not a party because she had no interest one way or the other in the subject matter thereof. Plaintiff, however, contends that inasmuch as the trust provision of the will provided that upon the death of all his children, Winifred Dodge Gray, Isabel Cleves Dodge, Frances Matilda Dodge and Daniel George Dodge, then the trustees were to convey the estate to the heirs of such children, and that, therefore, Anna Margaret Dodge had a contingent future interest in the corpus of the trust since the possibility existed that one or more of the other children of

testator might die without parent or issue surviving him or her, and in that event Anna Margaret, as surviving sister, would be entitled to share with the others. Of course, this possibility never materialized. She was the first of all of the children to die and her survivors became her heirs. *In re Dodge's Estate, supra.* Since all of the parties including plaintiff expressly excluded Anna Margaret Dodge as a necessary signatory to the settlement agreement, it is difficult to see on what ground her signature can now be held to be necessary. The fact that she was not a party to the settlement would prevent her or her heirs from relying on it by way of defense in a suit in which she or her heirs might be involved. Plaintiff has not sued her or her heirs since the theory of his suit is that his father died intestate as to the property subject to the trust, and that the defendants, whom he is suing, have received or will receive more than their intestate shares if the trust is allowed to continue, that he has received less than he is entitled to and that the defendants, therefore, are unjustly profiting at the expense of his share,—a charge he could not make, by hypothesis, against Anna Margaret or her successors in interest. He disclaims the validity of the trust. He attempts to repudiate the settlement in which he agreed with all the others that Anna Margaret Dodge was not a proper party and at the same time he claims the trust estate was intestate. His position is not tenable. He now claims that Anna Margaret Dodge had a contingent future interest which should have been recognized by a separate guardian in the former chancery proceedings. The common-law nature of contingent remainders as mere possibilities rather than as estates was described by us, citing *Hadley* v. *Henderson,* 214 Mich. 157, and quoting from *In re Coots' Estate,* 253 Mich.

208, 215, in *Stevens* v. *Wildey*, 281 Mich. 377, 379–380, as follows:

"The rule in this State is that, unless the will bespeaks a different intention, no estate vests in a contingent remainderman until the happening of the contingency, where the remainder is contingent on the life tenant dying without issue or lineal heirs, because survival of the life tenant by the contingent remainderman is a condition precedent to the latter's taking."

We further noted that while Act No. 211, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 12966–1, Stat. Ann. § 26.47), had changed the rule, the statute was not retroactive. To like effect see *In re Banks' Will*, 87 Md. 425 (40 Atl. 268), and *DuBois* v. *Judy*, 291 Ill. 340 (126 N. E. 104).

It is unnecessary to pass upon the other reasons for not joining Anna Margaret in the agreement in the previous chancery suit. The settlement agreement providing that she had no interest in the controversy was signed by plaintiff. Paragraph 19 of his present bill shows that plaintiff's attorneys participated in the chancery suit in which the settlement agreement was approved, and agreed to such approval. And Exhibit D-18, attached to and incorporated in the instant bill, being the order of approval and confirmation by the chancery court entered March 18, 1922, was not only signed by the judge, but was unqualifiedly O.K.'d and signed by plaintiff's attorneys. No appeal was taken from the decree or this order by plaintiff. He received what the settlement agreement provided. None of the minors who have now become of age or those for whom guardians were appointed in the instant suit have objected to or disavowed the settlement.

Petitioner claims that there was such a hiatus in the original probate proceedings that the court lost

jurisdiction and hence that the order admitting the will to probate was a nullity. The time for hearing the petition for the probate of the will was adjourned 30 times. On June 16, 1921, the date again set for hearing after the former adjournment, an entry of continuance to June 23, 1921, appears on the face of the petition for probate of the will and the docket of the court and in the short book, but there was no journal entry to that effect. On June 23, 1921, an order of continuance to July 12, 1921, was entered on the journal. However, on June 29, 1921, an order was entered stating that, *all* parties concerned being represented in open court and it appearing to the court that the order made and entered on the 23d day of June 1921, adjourning the hearing on the petition to July 12, 1921, was made through an inadvertence and a mistake, therefore, it was ordered that such previous order be vacated, and that the hearing be continued to the 29th day of June, 1921, at 2 o'clock in the afternoon. Petitioner does not claim that he was not present or not represented at the time, or that he in any way objected or was in any way harmed by the failure to enter the continuance on the journal of June 16th, or by the setting aside of the order of continuance to July 12, 1921, because of inadvertence or mistake. Even if there were any merit to plaintiff's claim, he is precluded from insisting on it 17 years afterwards.

He further claims the will was not properly proven because only one witness was sworn at the hearing. If there is a contest two witnesses, if available, should be sworn. *In re Paul's Estate,* 289 Mich. 452. While there was a good faith contest, it would appear that it was in process of settlement inasmuch as the settlement agreement was dated June 27, 1921, subject to the carrying out of subsequent proceed-

ings so as to make the agreement binding on the minors, et cetera. In his appeal from the probate to the circuit court, plaintiff did not allege lack of proof at the hearing as one of his grounds. On March 20, 1922, a judgment was entered in the circuit court on the appeal case where it was found that the instrument, the allowance of which had been appealed from, was in fact the last will and testament of John F. Dodge and was entitled to be allowed as such and it was adjudged that such instrument was the last will and testament of John F. Dodge. We see no merit whatsoever to plaintiff's claims that the will was not properly probated.

Plaintiff claims that the settlement agreement and supplemental agreement, dated June 27, 1921, and attached to the bill of complaint and the proceedings, orders and decrees of the circuit court for the county of Wayne, in chancery, purporting to approve and authorize said agreements, were and are null and void *ab initio*. We find Act No. 249, Pub. Acts 1921, constitutional and properly invoked in the former chancery proceedings and the proceedings regular. We also find that the decree therein is *res judicata*. Plaintiff, however, claims that courts may not validate something forbidden by law as against public policy. We are quite convinced from the record that there was some doubt as to the outcome of the will contest and the trust controversy; there is no doubt, however, that both contest and controversy were in good faith. With the uncertainty over the questions raised, plaintiff's counsel were willing to settle for almost 60 per cent. of what plaintiff's share would have been at the time of his father's death had there been no will, computing on the basis of what was found to be the share of Anna Margaret, who took as if there had been no will. Act No. 249, Pub. Acts 1921, was enacted for the very purpose of

settling questions over the validity of a will, when they are raised in good faith. The exhibits attached to the bill of complaint show beyond question that there were both a good-faith will contest and a good-faith trust controversy over the validity of the trust provisions of the will. The strengthening corroboration shown in the deposition taken before the hearing in the instant case and introduced by plaintiff is not needed. The purpose of the proceedings was not to perpetrate a fraud or to attempt to right something that was *malum in se*. The settlement agreement was approved by judicial decree. It became *res judicata*.

There is no claim by plaintiff that there was either intrinsic or extrinsic fraud in securing the decree. Had there been intrinsic fraud, remedy would have been by motion for rehearing and appeal; had there been extrinsic fraud only by prompt action and proper showing would plaintiff have had a footing in an equity court in the instant case. *Steele* v. *Culver,* 157 Mich. 344 (23 L. R. A. [N. S.] 564); *Becker* v. *Welch,* 206 Mich. 613; *Columbia Casualty Co.* v. *Klettke,* 259 Mich. 564; *Graure* v. *Detroit Lumber Co.,* 260 Mich. 47; *Hofweber* v. *Detroit Trust Co.,* 295 Mich. 96; *Fawcett* v. *Atherton,* 298 Mich. 362. Such is the well established doctrine of the United States Supreme Court (*United States* v. *Throckmorton,* 98 U. S. 61 [25 L. Ed. 93]), and of the texts (5 Pomeroy, Equity Jurisprudence (4th Ed.), § 2077; 126 A. L. R. 390–410). There not having been any fraud charged or proven in the first chancery suit, and jurisdiction having attached, the decree is *res judicata*.

In *Hatt* v. *Green,* 180 Mich. 383, Rollo Hatt, a grandson of testator, was born after the execution of the will, and therefore was not mentioned in it. Testator died in 1899, and shortly afterwards his

executors obtained·a decree from the circuit court construing the will, in a suit in which Rollo was made defendant. The decree adjudged that Rollo was entitled to no interest in testator's estate. About 12 years afterwards Rollo Hatt, among others, brought a bill for an accounting against the executors. In deciding against his claim, we pointed out:

"Moreover, he was a party to the proceeding in which the will was construed and his rights determined. No appeal was taken from that decree, and it stands as the law of the case."

The United States Supreme Court is likewise firmly committed to the public policy favoring the plea of *res judicata*. In *Treinies* v. *Sunshine Mining Co.*, 308 U. S. 66, 78 (60 Sup. Ct. 44, 84 L. Ed. 85), the opinion closes with this summarizing paragraph:

"One trial of an issue is enough (*Baldwin* v. *Iowa State Traveling Men's Ass'n*, 283 U. S. 522, 525 [51 Sup. Ct. 517, 75 L. Ed. 1244]). 'The principles of *res judicata* apply to questions of jurisdiction as well as to other issues' (*American Surety Co.* v. *Baldwin*, 287 U. S. 156, 166 [53 Sup. Ct. 98, 77 L. Ed. 231, 86 A. L. R. 298]), as well to jurisdiction of the subject matter as of the parties (*Stoll* v. *Gottlieb*, 305 U. S. 165, 172 [59 Sup. Ct. 134, 83 L. Ed. 104])."

And where a holder of drainage district bonds ignored notice of hearing before the Federal district court in proceedings to readjust the bonded indebtedness of the drainage district, he was concluded by the final decree in such proceedings, although the statute under which the court had acted was subsequently declared unconstitutional in a suit between other parties. The court had not expressly found that the statute was constitutional or that it had jurisdiction; no question as to its jurisdiction had

been raised, and it had simply assumed that it had it. The holder's subsequent action on the bonds was held barred by the prior adjudication in *Chicot County Drainage District* v. *Baxter State Bank,* 308 U. S. 371, 377, 378 (60 Sup. Ct. 317, 84 L. Ed. 329):

"There can be no doubt that if the question of the constitutionality of the statute had actually been raised and decided by the district court in the proceeding to effect a plan of debt readjustment in accordance with the statute, that determination would have been final save as it was open to direct review upon appeal. *Stoll* v. *Gottlieb, supra.*

"The remaining question is simply whether respondents, having failed to raise the question in the proceeding to which they were parties and in which they could have raised it and had it finally determined, were privileged to remain quiet and raise it in a subsequent suit. Such a view is contrary to the well-settled principle that *res judicata* may be pleaded as a bar, not only as respects matters actually presented to sustain or defeat the right asserted in the earlier proceeding, 'but also as respects any other available matter which might have been presented to that end.' *Grubb* v. *Public Utilities Commission of Ohio,* 281 U. S. 470, 479 (50 Sup. Ct. 374, 74 L. Ed. 972); *Cromwell* v. *County of Sac,* 94 U. S. 351, 352 (24 L. Ed. 195)."

From these authorities we hold that conclusions of law and fact actually reached by the court in the earlier proceeding (especially those incorporated in the decree by way of preamble) are *res judicata,* and further, that a prior decree precludes litigation of any issue of law or fact which a party to the earlier proceeding could have raised to sustain or defeat the claim therein advanced, though he did not do so. In his present bill and statement of reasons and grounds of appeal, plaintiff makes a dozen or more distinct attacks on the validity of the set-

tlement agreement, the constitutionality of Act No. 249, Pub. Acts 1921, and the conformity of the approval proceedings to the requirements of that statute and other statutes. Every point so advanced was either expressly passed upon in a manner unfavorable to plaintiff's present claim in the decree, or could have been, but was not, advanced by plaintiff (then defendant) to defeat the approval sought by the bill of complaint, in the 1921 suit. As against the former class of contentions, that decree is *res judicata,* under the rule of *Stoll* v. *Gottlieb, supra;* as against the latter class it is *res judicata* under the rule of *Chicot County Drainage District* v. *Baxter State Bank, supra.* Errors into which the judge may have fallen in disposing of one or more such contentions in 1921 (although we find none) do not entitle plaintiff to the relief sought by this bill, for the present suit is not an appeal from the former one. Though no question of any kind as to constitutionality was raised in the 1921 proceedings, the decree therein must be regarded as an adjudication against plaintiff's present contentions, that Act No. 249, Pub. Acts 1921, denies due process and that its title is inadequate to cover a grant of jurisdiction, just as in the *Drainage District case,* the readjustment decree was held by the United States Supreme Court to be *res judicata* against the contention (afterwards sustained in a different suit by the United States Supreme Court) that the municipal debt readjustment act unduly extended the Congressional bankruptcy power, though no claim of unconstitutionality had been made in the readjustment proceedings.

To prevent misunderstanding we desire to state that the present bill does not justify an inquiry into the merits of the 1921 decree because it is not a direct attack thereupon, inasmuch as it prays that

the prior decree be declared .void, not as its principal end and object, but merely as a means to another end which is its principal object, *i. e.*, the rendering intestate *ab initio* of the trust property. Furthermore, although it was once possible in this State to review the merits of an old decree by bill of review, bills of review were abolished, and replaced by motions for rehearing subject to strict limitations which have long since expired in the present case by Court Rule No. 48, §§ 1, 4 (1933).

We have not overlooked the sentence, quoted by counsel for plaintiff from *Rose* v. *Southern Michigan National Bank,* 255 Mich. 275, 278, ''It may be conceded that unless the agreement is so signed (*i. e.*, signed by all the persons whose signatures are required by Act No. 249) the court has no jurisdiction to approve it or authorize its execution by others,'' but we note that the question of *res judicata* was not present in that case, since that was a direct appeal from the lower court's decision.

We note in passing the breadth of the language of the settlement agreement: plaintiff relinquished ''any and all right, present or future, which first party has or may have, or claim to have, of, in or to the estate of John F. Dodge, deceased.'' Such language, no fraud being alleged, was held to exclude parol evidence that any particular claim was not intended to be included in *Erkiletian* v. *Devletian,* 299 Mich. 95, 100, collecting cases involving similar language.

Independent of the question of *res judicata,* there is the defense of compromise and settlement, which, if sustainable, would defeat the instant bill whether there had been any prior adjudication or not. Plaintiff invokes the rule that settlements of claims or defenses based on violations of public policy consisting of acts *mala in se* cannot be upheld. But we have

been able to discover no case, and counsel have produced none, which holds that where there is an honest dispute between competent legal minds as to what the law of perpetuities or restraint of alienation is, the parties cannot settle their differences in such a way as to preclude subsequent resort to the courts.

There is, on the contrary, a host of decisions which recognize that, where a doubt as to what the law is has been settled by a compromise, a subsequent judicial decision by the highest court of the jurisdiction upholding the view adhered to by one of the parties affords no basis for a suit by him to upset the compromise. *Lewis* v. *Cooper,* Cooke (3 Tenn.), 466; *Owen* v. *Hancock,* 38 Tenn. 563, 572, 573; *Spurlock* v. *Brown,* 91 Tenn. 241, 260 *et seq.* (18 S. W. 868); *Leach* v. *Cowan,* 125 Tenn. 182, 206, 207 (140 S. W. 1070, Ann. Cas. 1913C, 188); *Danheiser* v. *Germania Savings Bank & Trust Co.,* 137 Tenn. 650, 658, 659 (194 S. W. 1094); *Morris* v. *Munroe,* 30 Ga. 630; *City Electric R. Co.* v. *Floyd County,* 115 Ga. 655, 657 (42 S. E. 45); *Hume* v. *Davison-Paxon Co.,* 57 Ga. App. 289, 293 (195 S. E. 318); *Gilek* v. *Stock,* 33 Ill. App. 147; *Stover* v. *Mitchell,* 45 Ill. 213; *Wells* v. *Neff,* 14 Ore. 66 (12 Pac. 84, 88); *Smith* v. *Farra,* 21 Ore. 395 (28 Pac. 241, 20 L. R. A. 115); *Coffee* v. *Emigh,* 15 Col. 184 (25 Pac. 83, 10 L. R. A. 125); *Warner* v. *Warner,* 124 Conn. 625 (1 Atl. [2d] 911, 118 A. L. R. 1348); *Wooley* v. *Shell Petroleum Corp.,* 39 N. M. 256, 269 (45 Pac. [2d] 927); *Fisher* v. *May's Heirs,* 5 Ky. 448 (5 Am. Dec. 626); *Underwood* v. *Brockman,* 4 Dana (34 Ky.), 309 (29 Am. Dec. 407); *Peirce* v. *New Orleans Building Co.,* 9 La. 397 (29 Am. Dec. 448); Notes, 26 Am. Dec. 61, 99 Am. Dec. 496, 497, 20 L. R. A. 795 *et seq.;* 25 L. R. A. (N. S.) 275–310; and 118 A. L. R. 1357–1363.

The rule is the same in England (*Callischer* v. *Bischoffsheim,* L. R. 5 Q. B. 449), and is stated as

follows by Bowen, L. J., in *Miles* v. *New Zealand Alford Estate Co.*, 32 Ch. 266, 291 (55 L. J. Ch. 801, 54 L. T. 582, 34 W. R. 669):

"The reality of the claim which is given up (*i. e.*, compromised) must be measured, not by the state of the law as it is ultimately discovered to be, but by the state of the knowledge of the person who at the time has to judge and make the concession. Otherwise you would have to try the whole cause to know if the man had a right to compromise it, and with regard to questions of law it is obvious that you could never safely compromise a question of law at all."

The rule stated by the Georgia cases cited is succinct:

"Where parties have conflicting claims, depending on a law point, and they compromise them, each is bound by the settlement, whether the law point turns out to have been for or against them."

The cases just cited involve settlements or disputes as to a great variety of legal questions. Only two approach the case at bar as to the nature of the dispute compromised. Thus, in *Owen* v. *Hancock, supra,* the following language, very pertinent to the case at bar, appears at the close of the opinion:

"Under all these circumstances, should a court of equity restore the plaintiffs to their legal advantage, on the question of advancement, and interfere with the solemn agreement of the parties, by which equality and justice were produced? We think not. It was a family settlement, in which the father, the children and their select neighbors joined in consultation, and deliberately agreed upon terms of adjustment. The complainants took the benefit of $3,000 and an additional slave under it, and should not now be heard to complain. It was a doubtful

question of construction upon a will, and it was not improper to settle it by agreement and compromise, as a case of uncertainty, about which honest differences of opinion existed. There was no unfair advantage taken, or imposition practiced. If the complainants were mistaken as to their strict rights, it was a mistake of law on a question of very doubtful solution. If they acted upon their own judgment, or the reported opinions of others, as we think they did, they must abide by their contract and agreement. There is nothing in the case to move a court of conscience to relieve them."

The case closest to the case at bar, because it involves the settlement of a dispute as to what was the law governing the descent of real estate when decisions of the highest court of the State were wanting upon the point, is *Wooley* v. *Shell Petroleum Corp.*, *supra*, 269. There the owner died intestate and without issue. A dispute arose between her niece of the half blood, Nora Berry, on the one hand and the occupant of the premises, Clara Fowler, who had been taken into intestate's home as a child upon intestate's promise to the child's actual father that intestate would formally adopt the child, such promise never having been executed, on the other. The pertinent facts and conclusions of the supreme court of New Mexico on this particular phase of the case are thus stated:

"For more than 10 years following the death of Mary L. Fowler, Clara Fowler remained in continuous and uninterrupted occupancy and enjoyment of the property and paid the taxes. Then appeared Nora Berry, claiming to be the sole heir of Mary L. Fowler. In the ensuing dispute both women were represented by competent counsel, and no fraud was practiced. Clara Fowler's attorneys, to whom she disclosed the facts, and who made further investigation, advised her that she would be unable to

maintain her claims. Negotiations led to a compromise. It was agreed that Clara should have the surface rights and Nora Berry the mineral rights. The necessary deeds were exchanged.

"In view of our present conclusion on the equitable rights of Clara Fowler, it is plain that she made an unfortunate compromise. We know now that she should have had both surface and minerals: we know the great disparity in value between them, and that Nora Berry should have had neither. It is of the very nature of compromise, however, that the parties weigh their chances of prevailing and risk their judgment. *Frazier* v. *Ray,* 29 N. M. 121 (219 Pac. 492).

"This is a fully executed compromise. It was induced on the part of Clara Fowler by a mistake of law. But she had every opportunity to have and did have competent and able counsel. Nora Berry took no advantage and exerted no pressure except firmly to maintain a claim of right possessing so many features of merit as to convince able counsel and the trial court, and as to induce the plaintiffs to risk expensive litigation of it.

"It will not do to say that the equitable rights were here so plain that Nora Berry's claim was without foundation and that the transaction amounts to fraud. We find nothing to avoid the operation of the general rule, based on important considerations of public policy, that equity will support a compromise though based upon a mistake of law, and nothing to bring it within any of the decisions relied upon."

The most fitting rebuttal to plaintiff's assertion that he was denied due process of law in the former proceedings is to be found in the classic definition of due process by Judge Learned Hand:

"The requirement of due process is merely the embodiment of the English sporting idea of fair play."

In the case of *Lisenba* v. *California,* 314 U. S. 219 (62 Sup. Ct. 280, 86 L. Ed. — ), decided December 8, 1941, the court said:

"As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice."

This statement applies equally to a civil trial, where the court properly obtains and retains jurisdiction.

Reviewing plaintiff's participation, either in person, or by his attorneys, or both, in all previous proceedings, and his active cooperation in, and contemporaneous satisfaction with, the course they took, we are unable to find any denial of due process whatever.

Plaintiff's other contentions are likewise without merit. Certain other defenses raised, such as plaintiff's lack of clean hands, statute of limitations, laches, et cetera, need not be reviewed, because the case has been disposed of on the grounds already indicated.

In the last analysis, if the trust was valid, plaintiff has received far more than he was entitled to thereunder; if the trust was invalid, he has received all he was entitled to under a settlement which was brought about in the proper way.

The decree on the pleadings dismissing the bill of complaint is affirmed, with costs to defendants.

Chandler, C. J., and Boyles, North, Starr, Wiest, Bushnell, and Sharpe, JJ., concurred.